AMANDA DAVIS, PLAINTIFF-APPELLEE v. TOWN OF SOUTHERN PINES; CHRIS VANDEREIT, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; STANLEY KLINGENSCHMIDT, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, DEFENDANTS-APPELLANTS

No. 9320SC889

(Filed 1 November 1994)

1. **Appeal and Error § 118 (NCI4th)— denial of summary judgment based on immunity claim—immediate appeal allowed**

    The denial of a summary judgment motion on the grounds of absolute and qualified immunity is immediately appealable.

    **Am Jur 2d, Appeal and Error § 104.**

    **Reviewability of order denying motion for summary judgment. 15 ALR3d 899.**

2. **Sheriffs, Police, and Other Law Enforcement Officers § 23 (NCI4th)— civil rights action—jailing for public intoxication—summary judgment denied based on qualified immunity**

    In plaintiff's claim for money damages under 42 U.S.C. § 1983 against defendant police officers in their individual capacities, the trial court properly denied defendants' motion for summary judgment based upon the qualified immunity defense where plaintiff alleged that defendants violated her Fourth and Fourteenth Amendment rights by taking her to jail solely for being intoxicated in a public place; based on the facts in the record, defendants did not have probable cause to believe that plaintiff was in need of assistance pursuant to N.C.G.S. § 122C-303; and there were disputed issues of fact regarding the officers' conduct so that summary judgment was inappropriate.

    **Am Jur 2d, Sheriffs, Police, and Constables §§ 90 et seq.**

    **Supreme Court's views as to application or applicability of doctrine of qualified immunity in action under 42**

USCS § 1983, or in *Bivens* action, seeking damages for alleged civil rights violations. 116 L. Ed. 2d 965.

3. **Appeal and Error § 118 (NCI4th)— waiver of governmental immunity—false imprisonment and negligence claims— merits not addressed on interlocutory appeal**

Because defendant town waived its governmental immunity by the purchase of liability insurance, the trial court's denial of the town's motion for summary judgment on plaintiff arrestee's false imprisonment and negligence claims, based on the town's contention that it was exempt from liability for the conduct of its police officers, was not immediately appealable.

**Am Jur 2d, Appeal and Error § 104.**

**Reviewability of order denying motion for summary judgment. 15 ALR3d 899.**

4. **Constitutional Law § 81 (NCI4th)— constitutional claims—existence of adequate common law remedy—summary judgment on constitutional claims appropriate**

The trial court erred in denying summary judgment on plaintiff's claims under Article I, §§ 1 and 19 of the North Carolina Constitution, since a direct cause of action under the State Constitution is permitted only in the absence of an adequate state remedy, and plaintiff's constitutional right not to be unlawfully imprisoned and deprived of her liberty are adequately protected by her common law claim of false imprisonment, which protects her right to be free from unlawful restraint.

**Am Jur 2d, Actions §§ 40 et seq.; Constitutional Law §§ 557 et seq.**

Appeal by defendants from order entered 29 June 1993 by Judge F. Fetzer Mills in Moore County Superior Court. Heard in the Court of Appeals 21 April 1994.

This is an action seeking relief for alleged violations of plaintiff's rights guaranteed by the Fourth Amendment to the United States Constitution and Article I, sections 1 and 19, of the Constitution of North Carolina and seeking money damages pursuant to 42 U.S.C. 1983. In addition, plaintiff asserted common law claims based on negligence and false imprisonment.

**DAVIS v. TOWN OF SOUTHERN PINES**

[116 N.C. App. 663 (1994)]

On 19 November 1992, defendants answered and asserted *inter alia* the defenses of governmental immunity, qualified immunity, and immunity pursuant to G.S. 122C-303. On 11 June 1993, defendants moved for summary judgment; plaintiff moved to oppose summary judgment or alternatively, to continue defendants' motion for summary judgment.

At a hearing on 28 June 1993, the trial court denied defendants' motion for summary judgment. Defendants appeal.

*Rosenthal & Putterman, by Charles M. Putterman, for plaintiff-appellee.*

*Cranfill, Sumner & Hartzog, by H. Lee Evans, Jr. and Kari Lynn Russwurm, for defendant-appellants.*

EAGLES, Judge.

Defendants appeal the trial court's denial of their motion for summary judgment. After careful review of the record and briefs, we affirm in part and reverse in part.

[1] We note initially that the denial of a motion for summary judgment is ordinarily not immediately appealable. *Hill v. Smith*, 38 N.C. App. 625, 626, 248 S.E.2d 455, 456 (1978) (citations omitted). Here, defendants asserted the defenses of absolute and qualified immunity to plaintiff's 42 U.S.C. § 1983 claim and plaintiff's remaining claims. The denial of a summary judgment motion on the grounds of absolute and qualified immunity is immediately appealable. *Herndon v. Barrett*, 101 N.C. App. 636, 639, 400 S.E.2d 767, 769 (1991); *Corum v. University of North Carolina*, 97 N.C. App. 527, 531, 389 S.E.2d 596, 598, *temporary stay allowed*, 326 N.C. 595, 394 S.E.2d 453, *review and writ allowed, dismissal denied*, 327 N.C. 137, 394 S.E.2d 170 (1990), *rev'd on other grounds*, 330 N.C. 761, 413 S.E.2d 276, *reh'g denied*, 331 N.C. 558, 418 S.E.2d 664, *cert. denied, Durham v. Corum*, —— U.S. ——, 121 L.Ed.2d 431 (1992).

## I. STANDARD OF REVIEW

A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact for trial and that the moving party is entitled to judgment as a matter of law. *Pressman v. University of N.C. at Charlotte*, 78 N.C. App. 296, 300, 337 S.E.2d 644, 647 (1985), *review allowed*, 315

DAVIS v. TOWN OF SOUTHERN PINES

[116 N.C. App. 663 (1994)]

N.C. 589, 341 S.E.2d 28 (1986). In passing upon a motion for summary judgment, the court must view the evidence presented by both parties in the light most favorable to the nonmoving party. *Bradshaw v. McElroy*, 62 N.C. App. 515, 518, 302 S.E.2d 908, 911 (1983).

The affidavits of plaintiff Davis and defendant Klingenschmidt are set out in pertinent part here:

AFFIDAVIT OF AMANDA DAVIS

. . . .

3. On or about September 22, 1991, sometime around 1:30 a.m., I was in the Town of Southern Pines. I had been in Brook's [a local bar] that evening.

4. I was walking to a phone booth so that I could call a cab to take me home.

5. I tripped and fell near the Southern Pines Police Department.

6. A Southern Pines police officer, who I have been informed was Chris Vandereit, approached me and asked what had happened.

7. Another Southern Pines police [sic], Stanley Klingenschmidt, approached me, soon after Officer Vandereit, and told me that he was taking me to jail because I was drunk and a danger to myself. Officer Klingenschmidt did not talk with me before telling me that I was going to jail.

8. I explained that I was not bothering anyone and that I was on the way to a phone booth to call a cab to take me home.

9. Officer Klingenschmidt's response was to say that I was going to jail. He did not allow me to call a cab.

10. Michelle Brown, who was present, explained that she was my sister, that we were planning to call a cab to take us home, and that she would take care of me. The officers did not allow Ms. Brown to call a cab for us.

11. Officer Klingenschmidt told Ms. Brown that if she did not shut up, she would be taken to jail also.

12. Neither Officer Klingenschmidt or Vandereit asked if there was somewhere else I could go.

DAVIS v. TOWN OF SOUTHERN PINES

[116 N.C. App. 663 (1994)]

13. Neither Officer asked if there was someone I could call to come and get me.

14. The officers did not offer to take me home, which is about 8 miles from where we were, instead of the jail, which is about 15 miles from there.

15. Although I had been drinking, I was not a danger to myself or others. I was capable of looking out for myself. At the time Officers Klingenschmidt and Vandereit took me to the jail I was not in immediate need of medical care.

16. I was fully capable of calling a cab to take me home.

17. I was fully capable of walking to the home of Susan Phillips, another sister who lived nearby. Although I did not get along with Ms. Phillips' husband, I would have preferred to go to her house and wait outside for my mother or father to come get me than to go to jail. I was never given that option. The officers did not ask any questions that would have let them know that option existed.

18. My sister, Ms. Brown, was willing to help me get home and to look out for me. I never refused her help. Before the officers arrived, Ms. Brown and I were planning to take a cab together. At the time, Ms. Brown was staying with our parents who live near my home.

19. My mother took me and my sister to Southern Pines that evening. If necessary, I could have called her and asked her to pick me up.

20. My father tried to get me out of jail soon after I was placed there, but was not allowed to get me out until around 11:00 a.m. I could have called him and asked him to come get me had the officers allowed me to call him or even asked if that was a possibility.

21. Despite my requests, the officers would not allow me to use a phone to call anyone.

22. Officers Klingenschmidt and Vandereit took custody of me. They placed me in the front seat. Officer Vandereit drove. Officer Klingenschmidt sat in the back seat. I was not handcuffed.

23. The officers took me to the Moore County Jail, in Carthage, approximately 15 miles from the Town of Southern Pines.

24. Before putting me in jail, Officer Klingenschmidt said words to this effect: "You think you've had a good time tonight, you're going to have a real good time now." He also told me, "Bitch, you're going to jail. You're drunk and you're going to jail."

25. Soon after I was placed in a jail cell, I was assaulted by a detainee. I did not provoke the assault.

26. I received a fractured nose, a scratched eye, and bruises during the assault.

27. I was kept in the jail until about 11:00 a.m. that morning.

### AFFIDAVIT OF STANLEY L. KLINGENSCHMIDT

. . . .

1. My name is Stanley L. Klingenschmidt, and I am a lieutenant with the Southern Pines Police Department. I was a master police officer with the police department in September of 1991.

2. In the early morning hours of September 22, 1991, I was on routine patrol with officer-trainee, Chris Vandereit, traveling south on Southwest Broad Street in Southern Pines, North Carolina. We observed three white females out in front of the Southern Pines Post Office on Broad Street. As we got closer, I observed one female fall to the ground and one of the others tried to help her up.

3. We stopped the police car and got out of the car to approach the three females.

4. Two of the females were talking loudly to one another, and it appeared to us that they were arguing about something. We spoke to the two females who were talking loudly, and both appeared to have been drinking. One of the females, Amanda Davis, appeared to be extremely intoxicated. The other female, her sister, did not seem as intoxicated, nor did it appear that she needed any assistance.

5. Ms. Davis' sister informed us that they had just left the bar and were trying to get Ms. Davis home. We were informed that Ms. Davis lived in Hoke County.

6. We tried to get Ms. Davis to go home with her sister, but she refused. She used profane language towards us and said she was going to sit on the bench in front of the post office.

7. I informed Ms. Davis that in her condition, she could not be left there because she could be a danger to herself and that if she did not go home with her sister, that we would have to take her to jail until she sobered up. Ms. Davis continued to refuse to go with her sister.

8. At that point, we decided to take her to the Moore County jail. It was my opinion that she would be a danger to herself and possibly others if she was allowed to remain on the streets for any period of time. There was no other facility available to receive Ms. Davis in her condition that night.

9. We placed Ms. Davis in the patrol car and took her to the Moore County jail, where she was left in the custody of the Moore county jailers.

## II. PLAINTIFF'S 42 U.S.C. § 1983 CLAIM

[2] Plaintiff alleged a claim for money damages under 42 U.S.C. § 1983 (hereinafter section 1983) against defendants Klingenschmidt and Vandereit (hereinafter defendant officers) in their individual capacities. We note that plaintiff does not allege that defendant town violated section 1983. Plaintiff's complaint alleges that defendant officers "unreasonably seized Plaintiff Davis in violation of the Fourth Amendment to the United States Constitution" and "deprived Plaintiff Davis's [sic] of her liberty without due process of law, in violation of the Fourteenth Amendment to the United States Constitution, thus establishing a cause of action under 42 U.S.C. § 1983."

Section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding to redress.

*Corum v. University of North Carolina*, 330 N.C. 761, 770, 413 S.E.2d 276, 282 (1992).

"[S]tate governmental officials [may] be sued in their individual capacities for [monetary] damages under section 1983." *Id.* at 772, 413

S.E.2d at 283. Government officials sued under section 1983 may raise the defense of qualified immunity. *Id.* (citations omitted).

"The test of qualified immunity for police officers sued under [section 1983] is whether [the officers' conduct violated] clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Greene,* 114 N.C. App. 580, 585, 442 S.E.2d 547, 550 (1994) (citations omitted). In ruling on the defense of qualified immunity we must: (1) identify the specific right allegedly violated; (2) determine whether the right allegedly violated was clearly established at the time of the violation; and (3) if the right was clearly established, determine whether a reasonable person in the officer's position would have known that his actions violated that right. *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir. 1992). The first two determinations are questions of law for the court and should always be decided at the summary judgment stage. *Pritchett v. Alford,* 973 F.2d 307, 313 (4th Cir. 1992); *Lee v. Greene,* 114 N.C. App. 580, 585, 442 S.E.2d 547, 550 (1994). However, "the third [determination] . . . require[s] [the factfinder to make] factual determinations [concerning] disputed aspects of the officer[s'] conduct." *Lee v. Greene,* 114 N.C. App. at 585, 442 S.E.2d at 550 (citations omitted).

First, we identify the right allegedly violated. Here, plaintiff contends that defendant officers violated her Fourth and Fourteenth Amendment rights by taking her to jail solely for being publicly intoxicated. G.S. 14-447(a) provides that "[n]o person may be prosecuted solely for being intoxicated in a public place. A person who is intoxicated in a public place and is not disruptive may be assisted as provided in G.S. 122C-301." G.S. 122C-301(a) provides that:

(a) An officer may assist an individual found intoxicated in a public place by taking any of the following actions:

(1) The officer may direct or transport the intoxicated individual home;

(2) The officer may direct or transport the intoxicated individual to the residence of another individual willing to accept him;

(3) If the intoxicated individual is apparently in need of and apparently unable to provide for himself food, clothing, or shelter but is not apparently in need of immediate medical care, the officer may direct or transport him to an appropriate public or private shelter facility;

(4) If the intoxicated individual is apparently in need of but apparently unable to provide for himself immediate medical care, the officer may direct or transport him to an area facility, hospital, or physician's office; or the officer may direct or transport the individual to any other appropriate health care facility; or

(5) If the intoxicated individual is apparently a substance abuser and is apparently dangerous to himself or others, the officer may proceed as provided in Part 8 of this Article.

We now decide whether plaintiff's right not to be taken to jail was "clearly established" under the particular circumstances. Plaintiff contends that defendant officers did not follow the procedures in G.S. 122C-301(a) before taking plaintiff to jail pursuant to G.S. 122C-303. Defendants respond that in their judgment plaintiff was in need of assistance as contemplated by G.S. 122C-303. G.S. 122C-303 allows a police officer to assist a publicly intoxicated individual by taking the person to jail but **"only if** the intoxicated individual is apparently in need of and apparently unable to provide for himself food, clothing, or shelter but is not apparently in need of immediate medical care and if no other facility is readily available to receive him." G.S. 122C-303 (emphasis added). Taking plaintiff to jail against her will constituted an arrest. *State v. Sanders*, 295 N.C. 361, 245 S.E.2d 674 (1978), *cert. denied, Sanders v. North Carolina*, 454 U.S. 973; 70 L.Ed.2d 392 (1981) (citations omitted).

In determining whether a constitutional right not to be arrested under particular circumstances was "clearly established," we must identify both "the facts known to the arresting officer and the contours of the offense asserted as the justification for the arrest." *Pritchett v. Alford*, 973 F.2d at 314. The right is clearly established if the officers lacked probable cause "on either or both the factual knowledge or legal understanding components of the equation." *Pritchett*, 973 F.2d at 314 (citations omitted). Probable cause is defined as "those facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information which are sufficient to warrant a prudent [person] in believing that the suspect had committed or was committing an offense." *State v. Williams*, 314 N.C. 337, 343, 333 S.E.2d 708, 713 (1985) (citations omitted).

In examining the facts and circumstances known to the officers at the time of the arrest to determine whether summary judgment was properly denied, we must view the evidence in the light most favor-

able to plaintiff. *Bradshaw*, 62 N.C. App. at 518, 302 S.E.2d at 911. Plaintiff and her sister had been drinking at a nearby club and were walking down the street to a phone booth to call a cab to take them home when plaintiff tripped and fell. As plaintiff's sister was helping her get up, defendant Vandereit arrived and asked plaintiff, "What happened?" Plaintiff responded, "I fell." Officer Vandereit then asked plaintiff, "Are you drunk?" Plaintiff testified in her deposition that she answered, "I'm not bothering anybody." Defendant Klingenschmidt then approached plaintiff and told plaintiff that she was going to jail. Plaintiff's deposition continues as follows:

Q.   Okay. What did Officer Klingenschmidt said? [sic]

A.   He said I was going to jail?

Q.   Why did he say that?

A.   Because I was drunk . . . and a danger to myself. I said, "from what?" And he said, "Because you're drunk." And I said, "I'm not bothering anyone. I'm just going to call a cab." Then he said, "Well, you're going to jail."

Plaintiff testified further in her deposition that before placing her in the police car, defendant Klingenschmidt told plaintiff, "Bitch, you're going to jail. You're drunk and you're going to jail." In her affidavit plaintiff stated that when her sister offered to call a cab for plaintiff and take care of plaintiff, defendants told plaintiff's sister "that if she did not shut up, she would be taken to jail also." From the record it appears that the operative facts known to defendant officers at the time of the plaintiff's arrest were that plaintiff was publicly intoxicated at 1:30 a.m. and that while walking to a phone booth to call a cab she tripped and fell. Plaintiff told defendants that she was not bothering anybody and that she was going to call a cab to take her home. Plaintiff's sister offered to call a cab for plaintiff and take care of plaintiff.

We conclude that on these facts, defendants did not have probable cause to believe that plaintiff was in need of assistance pursuant to G.S. 122C-303. Since defendants did not have probable cause to arrest plaintiff pursuant to G.S. 122C-303 under the plaintiff's forecast of evidence, the right allegedly violated was clearly established.

Finally, we turn to the third part of our qualified immunity analysis. The third inquiry is whether the conduct at issue actually occurred and if so, whether a reasonable officer would have known

that his conduct would violate that right. As stated earlier, this third inquiry cannot be answered on summary judgment if there are disputed questions of fact regarding the officers' conduct. *Lee v. Greene*, 114 N.C. App. 580, 585, 442 S.E.2d 547, 550 (1994). Here, there is a dispute as to what defendants said upon arriving at the scene. Defendant Klingenschmidt stated in his affidavit that plaintiff refused to go home with her sister and that plaintiff was belligerent. Plaintiff testified in her deposition and in her affidavit that she did not refuse to go home with her sister. Because this creates an issue of material fact as to whether defendants' actions were reasonable under the circumstances, the trial court properly reserved this issue for trial. Accordingly, we affirm the trial court's denial of defendant officers' motion for summary judgment based upon the qualified immunity defense.

## III. PLAINTIFF'S FALSE IMPRISONMENT AND NEGLIGENCE CLAIMS

**[3]** All defendants contend that the trial court erred in denying their motion for summary judgment on plaintiff's false imprisonment and negligence claims. Because defendant town has waived its immunity as explained below, we decline to address the merits of those two claims in this interlocutory appeal.

Plaintiff sued defendant officers in both their official and individual capacities on both claims and claimed that their actions could be imputed to defendant town. However, if a plaintiff "fails to advance any allegations in his or her complaint other than those relating to a defendant's official duties, the complaint does not state a claim against a defendant in his or her individual capacity." *Taylor v. Ashburn*, 112 N.C. App. 604, 607-08, 436 S.E.2d 276, 279 (1993), *review denied*, 336 N.C. 77, 445 S.E.2d 46 (1994). Instead, we treat the complaint as a claim against defendant in his official capacity. *Id.* Here, plaintiff's allegations regarding her claims of false imprisonment and negligence relate only to defendants' official duties as police officers. Accordingly, plaintiff's complaint states a claim against defendant officers in their official capacities only.

### A. Governmental Immunity

Under the common law doctrine of governmental immunity, "a municipality is immune from liability for the torts of its officers committed while they were performing a governmental function." *Wiggins v. City of Monroe*, 73 N.C. App. 44, 49, 326 S.E.2d 39, 43 (1985), *cert. denied*, 320 N.C. 178, 358 S.E.2d 72 (1987). This immuni-

ty protects the municipality and its officers and employees sued in their official capacities. *Taylor v. Ashburn*, 112 N.C. App. 604, 607, 436 S.E.2d 276, 279 (1993) (citations omitted). A municipality may waive its governmental immunity by purchasing liability insurance. *Id*; G.S. 160A-485. However, immunity is waived only to the extent of the coverage of the liability insurance. G.S. 160A-485(a); *Wiggins v. City of Monroe*, 73 N.C. App. 44, 50, 326 S.E.2d 39, 43 (1985).

Here, defendant town admitted in its answer that it had purchased liability insurance for "certain acts by its officers, agents, or employees when acting within the scope of their authority and course of their employment" and that governmental immunity had been waived "to the limited extent allowed by N.C. Gen. Stat. § 160A-435." Defendant town does not argue that defendant officers were acting outside the course and scope of their employment at the time they took plaintiff to jail. Accordingly, defendants are .not immune from liability for the torts of defendant officers to the extent of defendant town's liability insurance.

### B. Plaintiff's False Imprisonment Claim

The sole issue before us in this interlocutory appeal is whether the trial court erred in denying summary judgment with regard to defendants' immunity defenses. Defendants have admitted that they are not shielded by immunity because they purchased liability insurance. Therefore, we decline to address the merits of the false imprisonment issue here, since a denial of summary judgment on that basis would be interlocutory and not immediately appealable.

In its defense of plaintiff's false imprisonment claim, defendant town also contends that it is exempt from liability under G.S. 122C-301(b) for the conduct of defendant officers. We have already noted that while the denial of a summary judgment motion is ordinarily interlocutory, the denial of a summary judgment motion on the grounds of sovereign and qualified immunity is an exception to the rule and is immediately appealable. The exemption from liability afforded to officers pursuant to G.S. 122C-301(b) is not included in this limited exception. Accordingly, we also decline to address the merits of defendants' defense under G.S. 122C-301(b) in this interlocutory appeal.

### C. Plaintiff's Negligence Claim

Defendants further contend that the trial court erred in denying summary judgment on plaintiff's negligence claim. For the reasons

stated above with regard to plaintiff's false imprisonment claim, we decline to reach plaintiff's negligence claim in this limited interlocutory appeal.

## IV. PLAINTIFF'S STATE CONSTITUIONAL LAW CLAIM

[4] Finally, defendants contend that the trial court erred in denying summary judgment on plaintiff's claims under Article I, sections 1 and 19 of the North Carolina Constitution. We agree.

Article I, sections 1 and 19 provide in pertinent part:

Section 1. The equality and rights of persons.

We hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness.

Section 19. Law of the land; equal protection of the laws.

No person shall be taken, imprisoned, . . . or in any manner deprived of his life, liberty, or property, but by the law of the land.
. . .

Plaintiff contends in her brief that if her state constitutional rights are to be protected, she must be allowed a direct cause of action under the State Constitution. However, a direct cause of action under the State Constitution is permitted only "in the absence of an adequate state remedy." *Corum v. University of North Carolina*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992).

When called upon to exercise its inherent constitutional power to fashion a common law remedy for a violation of a particular constitutional right, [] the judiciary must recognize two critical limitations. First, it must bow to established claims and remedies where these provide an alternative to the extraordinary exercise of its inherent constitutional power.

*Id.* at 784, 413 S.E.2d at 291 (citations omitted).

Here, there is an adequate state remedy for plaintiff's injury. Plaintiff's constitutional right not to be unlawfully imprisoned and deprived of her liberty are adequately protected by her common law claim of false imprisonment, which protects her right to be free from unlawful restraint. *Alt v. Parker*, 112 N.C. App. 307, 317, 435 S.E.2d 773, 779 (1993), *cert. denied*, 335 N.C. 766, 442 S.E.2d 507 (1994). If

plaintiff's false imprisonment claim is successful, she will be compensated for the injury she claims in her direct constitutional claim. *Id.* at 317-18, 435 S.E.2d at 779. Accordingly, we reverse and remand for entry of summary judgment for defendants on plaintiff's state constitutional claims.

## V.

In sum, we affirm the trial court's denial of summary judgment on plaintiff's section 1983 claim and her state common law claims of negligence and false imprisonment. We reverse the trial court's denial of summary judgment on plaintiff's claims under the State Constitution. Accordingly, we remand this case to the trial court for entry of summary judgment on the state constitutional claims and for trial of the remaining claims.

Affirmed in part, reversed in part and remanded.

Judges LEWIS and WYNN concur.