WILLIAM BARNETT, JR., DIANA ALSTON, JESSIE ALSTON, WILLIE GEORGE BROOKS, CRISTIFUS BROWN, TERRY CLARK, EMMA COUNCIL, MAXINE COUNCIL, BORIS EDWARDS, KENNETH EDWARDS, MARGARET B. FOSTER, ANITA GATTIS, CATHERINE DIANE GORDON, BARRY NELSON HARRINGTON, CECIL B. JACOBS, LOUIS J. JACOBS, RICKY LEE JACOBS, BESSINE B. LYONS, LIMWOOD MARTIN, JESSIE McLEOD, JOANN McLEOD, CHARLES MITCHELL, CHERYL MITCHELL, KEITH A. MITCHELL, BUDD NORWOOD, LARRY LENNIE O'NEAL, ANTHONY PAGE, JR., DIANA D. RILEY, LONNETTA RILEY, WILLIE ROBINSON, AUDREY R. SMITH, JEFFERY SMITH, ROBERT TAYLOR, ANTHONY LOUIS WEBB, DONNIE C. WEBB, LOUIS E. WEBB, AND SAUNDRA WOODS, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED, PLAINTIFFS V. RALPH KARPINOS, INDIVIDUALLY AND IN HIS POSITION AS TOWN ATTORNEY FOR THE TOWN OF CHAPEL HILL, ARNOLD GOLD, INDIVIDUALLY AND IN HIS POSITION AS CHIEF OF POLICE FOR THE TOWN OF CHAPEL HILL, LINDY PENDERGRASS, INDIVIDUALLY AND IN HIS POSITION AS SHERIFF OF ORANGE COUNTY, THOMAS SNIPES, INDIVIDUALLY AND IN HIS POSITION AS CHIEF OF THE DETECTIVE BUREAU, CHAPEL HILL POLICE DEPARTMENT, BEN WISEMAN, INDIVIDUALLY AND IN HIS POSITION AS DETECTIVE, CHAPEL HILL POLICE DEPARTMENT, MELISSA G. McCALL, INDIVIDUALLY AND IN HER POSITION AS DETECTIVE, CARRBORO POLICE DEPARTMENT, MARSHA E. GALE, INDIVIDUALLY AND IN HER POSITION AS DETECTIVE, CHAPEL HILL POLICE DEPARTMENT, TOWN OF CHAPEL HILL, A MUNICIPAL CORPORATION, ORANGE COUNTY, A MUNICIPAL CORPORATION, ROBERT MORGAN, INDIVIDUALLY AND IN HIS POSITION AS DIRECTOR, NORTH CAROLINA STATE BUREAU OF INVESTIGATION, CHARLES DUNN, INDIVIDUALLY AND IN HIS POSITION AS DEPUTY DIRECTOR, NORTH CAROLINA STATE BUREAU OF INVESTIGATION, AND SEVERAL UNKNOWN AGENTS OF THE NORTH CAROLINA STATE BUREAU OF INVESTIGATION, INDIVIDUALLY, DEFENDANTS

No. 9315SC1316

(Filed 15 August 1995)

**1. Sheriffs, Police, and Other Law Enforcement Officers § 23 (NCI4th)— drug raid—city block sealed—§ 1983 action**

In an action under 42 U.S.C. § 1983 arising from a drug raid in which a city block was cordoned off, the trial court erred in granting defendants' motion for summary judgment based on immunity

BARNETT v. KARPINOS

[119 N.C. App. 719 (1995)]

arising from official capacity. There was sufficient evidence to withstand the motion in that Chapel Hill law enforcement policy is developed by the police chief in consultation with the Town Manager; the decision to obtain the search warrant originated with defendants Gale, Wiseman, and McCall, detectives with the Chapel Hill and Carrboro police departments; after drafting the affidavit and accompanying warrant, they conferred with defendant Gold, the Chapel Hill police chief, and defendant Karpinos, the Chapel Hill Town Attorney; both men gave the operation their approval; defendant Gold kept the Town Manager abreast of the situation and how it was being handled; and, when asked what the Town Manager said about the planned operation, Gold stated "I venture to say he just listened and said okay." A § 1983 claim against the individual defendants in their official capacity is essentially a claim against Chapel Hill, and, because Chapel Hill is not immune from suit, neither are defendants in their official capacity. However, summary judgment was correctly granted as to defendant McCall because no evidence was presented as to policy or custom by the Town of Carrboro and summary judgment was also correctly granted to the extent plaintiffs sought punitive damages.

**Am Jur 2d, Sheriffs, Police, and Constables §§ 90-95.**

**Supreme Court's views as to application or applicability of doctrine of qualified immunity in action under 42 USCS sec. 1983, or in *Bivens* action, seeking damages for alleged civil rights violations. 116 L. Ed. 2d 965.**

2. **Searches and Seizures § 1 (NCI4th)— drug raid—city block cordoned off—§ 1983 action— defendants' individual capacity**

The trial court erred in granting summary judgment for defendants in their individual capacity in a 42 U.S.C. § 1983 action arising from a drug raid in which officers, many in camouflage and black masks, surrounded and sealed off a city block and ordered all people congregating on a street and inside a club to either lie face down or stand against a wall with their hands up until one of three detectives could identify them as not being one of the targets of the search. The specific right allegedly violated in this case is plaintiffs' right to be free from unreasonable search and seizure and, while there is an absolute dearth of case law regarding this type of mass search and seizure, this absence does

not preclude a determination that plaintiffs' right was clearly established as there is an abundance of case law on each individual's right to be free from unreasonable search and seizure. The search warrant here is invalid as little more than a general warrant unsupported in many respects by the requisite probable cause. Moreover, defendants' decision to detain and frisk all persons found within the block during the raid was based on a generalized presumption of "guilt" by presence which does not support the measures taken against each individual. Finally, the officers conducted much more than a weapons frisk and plaintiffs had a clearly established right to be free from full searches based on anything short of probable cause. A question of material fact exists as to whether a reasonable person in these defendants' position would have known their conduct violated plaintiffs' clearly established rights.

**Am Jur 2d, Searches and Seizures § 3.**

**3. Constitutional Law § 85 (NCI4th)— drug raid—city block cordoned off—state constitutional remedy—common law remedy**

The trial court did not err in an action arising from a drug raid in which a city block was cordoned off by dismissing plaintiffs' state constitutional claims because plaintiffs' constitutional claims are adequately protected by their common law tort claims.

**Am Jur 2d, Constitutional Law §§ 557-573.**

**4. Municipal Corporations § 446 (NCI4th)— drug raid—mass search—common law claim—official capacity—purchase of insurance**

The trial court erred in an action arising from a drug raid in which a city block was cordoned off by granting summary judgment for plaintiffs on the issue of immunity from common law claims where plaintiffs alleged and Chapel Hill acknowledged the purchase of liability insurance and there was no evidence that this claim was excluded from coverage.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 37-41.**

**Comment Note.—Municipal immunity from liability for torts. 60 ALR2d 1198.**

**5. Sheriffs, Police, and Other Law Enforcement Officers § 1 (NCI4th)— drug raid—mass search—common law tort claims— individual immunity**

The trial court did not err by granting summary judgment for defendants in their individual capacity on common law tort claims in an action arising from a drug raid in which a city block was cordoned off. Defendants exercised their judgment and discretion within the scope of their official authority and there is no evidence that defendants acted either corruptly or maliciously.

**Am Jur 2d, Sheriffs, Police, and Constables §§ 46-67.**

**6. Declaratory Judgment Actions § 7 (NCI4th)— drug raid— city block cordoned off—declaratory judgment as unlawful—not a justiciable controversy**

The trial court properly granted summary judgment for defendants in an action arising from a mass drug raid where plaintiffs sought a declaratory judgment that this and similar raids are unlawful and in violation of the right to be free from unreasonable search and seizure. The search has already taken place and an action seeking to have it and similar searches declared invalid is not appropriate. N.C.G.S. § 1-253.

**Am Jur 2d, Decaratory Judgments §§ 29-32.**

Appeal by plaintiffs from orders entered 25 May 1993 and 26 May 1993 by Judge Knox V. Jenkins, Jr., in Orange County Superior Court. Heard in the Court of Appeals 5 April 1995.

Beginning at 9:00 p.m. on 16 November 1990, Chapel Hill law enforcement, assisted by the special response team of the State Bureau of Investigation, executed a search warrant on the one hundred block of Graham Street in Chapel Hill. The raid, known as "Operation Readi-Rock," was conducted to locate and identify a small number of individuals suspected of drug trafficking and culminated from several months of surveillance on Graham Street. In executing the warrant, officers and agents, many outfitted in camouflage and black masks, surrounded and sealed off the block. According to plaintiffs, they ordered all people congregating on Graham Street and inside a club known as the Village Connection to either lie face down on the floor or stand against a wall with their hands up.

During the raid, sixty to one hundred people were searched and detained until one of three detectives who could identify the targets

of their search determined they were not one of the individuals being sought. Many plaintiffs claim they were fully searched during the raid. Many also complained that officers failed to identify themselves, leading them to believe they were being robbed or attacked. Others reported injuries at the hands of officers. All of those detained were African-American and many stated that whites were allowed to leave the area during the raid. During the raid officers seized approximately $700.00 to $2,000.00 in cash, $1,000.00 to $2,000.00 in cocaine, and some weapons. Several arrests were made but none were prosecuted.

Plaintiffs filed this action alleging violations of 42 U.S.C. § 1983 (section 1983), Article I, §§ 1, 18, and 20 of the North Carolina Constitution, and the common law torts of assault, battery, false imprisonment, and malicious prosecution. They also sought a declaration under N.C. Gen. Stat. § 1-253 (1983) that this and similar raids were unconstitutional.

Plaintiffs voluntarily dismissed their claims for monetary damages against defendants Morgan and Dunn. In addition, they voluntarily dismissed all claims against defendants Pendergrass and Orange County. Defendants Town of Chapel Hill (Chapel Hill), Karpinos, Gold, Snipes, Wiseman, McCall, and Gale filed motions for summary judgment on the basis of immunity. The trial court granted their motion on all causes of action. Plaintiffs appeal.

*Glover & Petersen, P.A., by James R. Glover, for plaintiff appellants.*

*Bailey & Dixon, by Gary S. Parsons, Patricia P. Kerner, and Kenyann G. Brown, for defendant appellee Karpinos.*

*Cranfill, Sumner & Hartzog, L.L.P., by Dan M. Hartzog and Patricia L. Holland, for defendant appellees Gold, Snipes, Wiseman, Gale, and Town of Chapel Hill.*

*Michael B. Brough & Associates, by Michael B. Brough, for defendant appellee McCall.*

ARNOLD, Chief Judge.

This appeal involves defendants Chapel Hill, Karpinos, Gold, Snipes, Wiseman, Gale, and McCall. Plaintiffs argue that the trial court erred in dismissing their claims against these defendants.

## I. 42 U.S.C. § 1983

[1] Plaintiffs' first cause of action is grounded in section 1983, under which they seek compensatory and punitive damages, as well as equitable relief. They alleged officers used unreasonable and excessive force in executing the search warrant, and that defendants detained them without a valid warrant, probable cause, or reasonable suspicion, all in violation of the right to be free from unreasonable search and seizure. Plaintiffs sued defendants in both their official and individual capacity.

### A. Official Capacity

Plaintiffs contend immunity does not apply to this claim and that the trial court erred in dismissing it on that basis. We agree.

Municipalities may be sued under section 1983 where the allegedly unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690, 56 L. Ed. 2d 611, 635 (1978). "[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. Cincinnati*, 475 U.S. 469, 480, 89 L. Ed. 2d 452, 463 (1986). In *Pembaur*, the Court added that:

> a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.

*Id.* at 481, 89 L. Ed. 2d at 463-64.

Chapel Hill law enforcement policy is developed by the police chief who "[r]ecommends and enforces departmental policies, rules, and regulations . . . [and] determines practices and methods to be used by departmental personnel in consultation with the Town Manager." The decision to obtain the search warrant originated with defendants Gale, Wiseman, and McCall. After drafting the affidavit and accompanying warrant, they conferred with defendant Gold, the

police chief, and defendant Karpinos. Both men gave the operation their approval. Defendant Gold kept the Town Manager abreast of the situation and how it was being handled. When asked what the Town Manager said about the planned operation, Gold stated "I venture to say he just listened and said okay."

This evidence of policy is sufficient to withstand defendants' motion for summary judgment and the trial court erred in dismissing this portion of plaintiffs' section 1983 claim. A section 1983 claim against the individual defendants in their official capacity is essentially a claim against Chapel Hill. Because Chapel Hill is not immune from suit, neither are defendants in their official capacity. However, we affirm summary judgment as to defendant McCall as plaintiffs presented no evidence of policy or custom on the part of her employer, the Town of Carrboro.

Moreover, we affirm summary judgment to the extent plaintiffs sought punitive damages under section 1983. *See Newport v. Facts Concerts, Inc.*, 453 U.S. 247, 69 L. Ed. 2d 616 (1981) (holding that a municipality is immune from punitive damages under section 1983); *Long v. City of Charlotte*, 306 N.C. 187, 293 S.E.2d 101 (1982). In addition, we reverse summary judgment as to plaintiffs' claim for injunctive relief. *See Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276, *cert. denied*, —— U.S. ——, 121 L. Ed. 2d 431 (1992).

## B. Individual Capacity

[2] Plaintiffs also argue that defendants are not entitled to qualified immunity under section 1983. In reviewing this argument, we apply the following standard:

"The test of qualified immunity for police officers sued under [section 1983] is whether [the officers' conduct violated] clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Greene*, 114 N.C. App. 580, 585, 442 S.E.2d 547, 550 (1994) (citations omitted). In ruling on the defense of qualified immunity we must: (1) identify the specific right allegedly violated; (2) determine whether the right allegedly violated was clearly established at the time of the violation; and (3) if the right was clearly established, determine whether a reasonable person in the officer's position would have known that his actions violated that right. *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). The first two determinations are questions of law for the court and should always be decided at

the summary judgment stage. *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992); *Lee v. Greene*, 114 N.C. App. 580, 585, 442 S.E.2d 547, 550 (1994). However, "the third [determination] . . . require[s] [the factfinder to make] factual determinations [concerning] disputed aspects of the officer[s'] conduct." *Lee v. Greene*, 114 N.C. App. at 585, 442 S.E.2d at 550 (citations omitted).

*Davis v. Town of Southern Pines*, 116 N.C. App. 663, 670, 449 S.E.2d 240, 244 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995).

The specific right allegedly violated in this case is plaintiffs' right to be free from unreasonable search and seizure. There is an absolute dearth of case law regarding this type of mass search and seizure. We do not agree, however, that this absence precludes a determination that plaintiffs' right was clearly established as there is an abundance of case law on each individual's right to be free from unreasonable search and seizure. " 'Clearly established' . . . includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992).

This operation offends those core principles in many respects, the first being the warrant itself. "The fourth amendment's requirement that warrants must particularly describe the items to be searched for and seized is designed to prevent law enforcement officials from engaging in general searches." *State v. Williams*, 315 N.C. 310, 317, 338 S.E.2d 75, 80 (1986). Here, defendants contend they intended only to briefly detain and frisk people located within the cordoned-off block to search for a small number of individuals suspected of drug trafficking. The warrant, however, authorized a much broader search. For example, the warrant application stated that there was "probable cause to believe that *cocaine, drug paraphernalia, currency, [and] records indicating transactions of drugs*" would be found on the persons or places identified below. The places identified for a search were "107 and 115 on Graham Street, between W. Rosemary Street and West Franklin Street." The persons identified for a search were those "persons congregating in the block of Graham Street between W. Franklin and W. Rosemary Streets on sidewalks, alleyways and parking lots and street areas as more fully described in the attached Affidavit." Defendants admit probable cause was lacking to search the individuals identified above.

BARNETT v. KARPINOS

[119 N.C. App. 719 (1995)]

While we appreciate the difficulties inherent in conducting drug investigations, we cannot condone such a broadly stroked approach to law enforcement. The warrant is invalid as little more than a general warrant unsupported in many respects by the requisite probable cause. Indeed, Magistrate Riley testified that she had strong reservations about the warrant and several statements within the supporting affidavit, but felt pressured by defendant Gale to sign it. Plaintiffs had a clearly established right to be free from searches derived from search warrants based on less than probable cause.

Moreover, defendants' decision to detain and frisk all persons found within the block during the raid was based on a generalized presumption of "guilt" by presence. This presumption does not support the measures taken against each individual. *See, e.g., Ybarra v. Illinois*, 444 U.S. 85, 62 L. Ed. 2d 238 (1979) (mere propinquity to people independently suspected of criminal activity, without more, does not give probable cause to search that person); *State v. Fleming*, 106 N.C. App. 165, 415 S.E.2d 782 (1992) (mere proximity to a high drug area is insufficient to allow a seizure, and to do so is unreasonable). Defendants admit they had no knowledge of many plaintiffs' identity or reputation. Their interest in locating the individuals suspected of drug trafficking is grossly outweighed by the infringement on the rights of the sixty to one hundred searched and detained. *See Brown v. Texas*, 443 U.S. 47, 61 L. Ed. 2d 357 (1979). Moreover, assuming plaintiffs' allegations to be true, as we must, the officers conducted much more than a weapons frisk. Plaintiffs had a clearly established right to be free from full searches based on anything short of probable cause, *see State v. Pittman*, 111 N.C. App. 808, 433 S.E.2d 822 (1993), and probable cause was lacking for a full search.

We must now determine whether a reasonable person in these defendants' position would have known their conduct violated plaintiffs' clearly established rights. We believe a question of material fact exists on this point precluding summary judgment. " '[I]f there are genuine issues of historical fact respecting the officer's conduct or its reasonableness under the circumstances, summary judgment is not appropriate, and the issue must be reserved for trial.' " *Lee v. Greene*, 114 N.C. App. 580, 585, 442 S.E.2d 547, 550 (1994) (quoting *Pritchett*, 973 F.2d 307, 313 (4th Cir. 1992)).

## II. State Constitutional Claims

[3] Plaintiffs contend the trial court erred in dismissing their state constitutional claims brought against defendants in their official

capacity, arguing that immunity is not a defense. Defendants maintain that *Corum* precludes a direct cause of action under the North Carolina Constitution where adequate state remedies exist to redress violations of individual rights. We agree. Moreover, we agree with defendants that this claim cannot be brought against them in their individual capacities. *See Corum*, 330 N.C. 761, 413 S.E.2d 276.

"[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." *Corum*, 330 N.C. 761, 782, 413 S.E.2d 276, 289. The judiciary, however, "must bow to established claims and remedies where these provide an alternative to the extraordinary exercise of its inherent constitutional power." *Id.* at 784, 413 S.E.2d at 291.

In *Davis v. Town of Southern Pines*, plaintiff presented a state constitutional claim under Article I, §§ 1 and 19. Acknowledging *Corum's* limitation on direct actions, we held that "[p]laintiff's constitutional right not to be unlawfully imprisoned and deprived of her liberty are adequately protected by her common law claim of false imprisonment, which protects her right to be free from unlawful restraint." *Davis*, 116 N.C. App. 663, 675, 449 S.E.2d 240, 248. We now hold that plaintiffs' constitutional rights are adequately protected by their common law tort claims, and that a direct cause of action is not warranted in this case.

### III. Common Law Tort Claims

[4] Plaintiffs sued defendants under four common law tort theories. They first contend the trial court erred in dismissing these claims because discovery, as limited by defendants, related only to immunity which does not apply to these claims. We do not agree.

### A. Official Capacity

Plaintiffs contend that "[w]hen a city official is sued for tort in his official capacity, state sovereign immunity is waived by the purchase of liability insurance." They argue that Chapel Hill acknowledges it purchased liability insurance and that defendants acted within the course and scope of their employment; therefore, defendants are not shielded by immunity. We agree.

"[A] municipality and its officers or employees sued in their official capacities are immune from suit for torts committed while the officers or employees are performing a governmental function."

*Morrison-Tiffin v. Hampton*, 117 N.C. App. 494, 504, 451 S.E.2d 650, 657, *appeal dismissed and disc. review denied*, 339 N.C. 739, 454 S.E.2d 654 (1995). Municipalities may waive immunity, pursuant to N.C. Gen. Stat. § 160A-485 (1994), by purchasing liability insurance. *Id.*

Here, plaintiffs alleged, and Chapel Hill acknowledged, the purchase of liability insurance. There is no evidence that this claim is excluded from coverage, nor are we aware that defendants deny coverage. Accordingly, the trial court erred in granting summary judgment for defendants. We do not address the underlying merits of these claims, believing that such an undertaking would be premature.

### B. Individual Capacity

[5] Plaintiffs argue that defendants are not immune from these claims in their individual capacity. They argue that "[a] public official has no state sovereign immunity defense for tort claims when sued in his individual capacity."

In *Smith v. State*, our Supreme Court stated that " 'a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto.' " *Smith v. State*, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976) (quoting *Smith v. Hefner*, 235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952)). As long as the official lawfully exercises his judgment or discretion, stays within the scope of his official authority, and does not act with malice or corruption, he is protected from liability. *Id.*

Here, defendants exercised their judgment and discretion within the scope of their official authority. While we disagree with the outcome of that exercise, there is no evidence that defendants acted either corruptly or maliciously. The trial court did not err in granting summary judgment for defendants in their individual capacity.

### IV. Declaratory Relief Claim

[6] Plaintiffs sought a declaratory judgment that this and similar raids are unlawful and in violation of the right to be free from unreasonable search and seizure. They contend the trial court erred in dismissing this claim because it is not barred by immunity.

N.C. Gen. Stat. § 1-253 (1983) states that "[c]ourts . . . shall have power to declare rights, status, and other legal relations." This requires an actual controversy. "An actual controversy exists when

litigation arising out of conflicting contentions as to rights and liabilities appears unavoidable." *Majebe v. North Carolina Board of Medical Examiners*, 106 N.C. App. 253, 257, 416 S.E.2d 404, 406, *appeal dismissed and disc. review denied*, 332 N.C. 484, 421 S.E.2d 355 (1992).

In *Majebe*, plaintiff sought a declaration regarding the validity of a search of her office, claiming that the warrant was defective. We held that since the search had already taken place there was "no controversy appropriate for a declaratory judgment." *Id.* at 259, 416 S.E.2d at 407 (stating that if the State prosecuted plaintiff that proceeding would "be the proper forum to challenge the search"). Here, as in *Majebe*, the search has already taken place. An action seeking to have this and similar searches declared invalid is not appropriate.

In summation, we affirm summary judgment on plaintiffs' (1) claims for punitive damages under section 1983, (2) claims under our state constitution, (3) common law tort claims against defendants in their individual capacity, and (4) N.C. Gen. Stat. § 1-253 (1983). We reverse summary judgment on plaintiffs' (1) section 1983 claims against defendants in their official capacity, with the exclusion of defendant McCall, (2) section 1983 claims against defendants in their individual capacity, and (3) common law tort claims against defendants in their official capacity.

Affirmed in part, reversed in part, and remanded.

Judges WYNN and JOHN concur.