INTEGON SPECIALTY INSURANCE COMPANY, Plaintiff v. JACKIE McCOLLUM
AUSTIN, Administratrix of the Estate of AUDREY SIMONE AUSTIN, Defendant

No. COA01-613

(Filed 16 July 2002)

**Insurance— uninsured motorist coverage—normal or ordinary
use of motor vehicle—shooting at another car**

The trial court correctly granted summary judgment for
plaintiff insurer in a declaratory judgment action to determine
coverage under an uninsured motorist policy where defendant's
daughter (Audrey) was a passenger in a car when the driver
(Gregory) held a gun out his window, the gun discharged, and
Audrey was killed by the ricochet. Even accepting Gregory's
claim that the discharge was accidental, intentionally pointing a
gun out the window of a moving automobile towards the occu-
pants of another moving automobile does not constitute normal
or ordinary use of a motor vehicle.

Appeal by defendant from judgment entered 29 January 2001 by
Judge A. Moses Massey in Guilford County Superior Court. Heard in
the Court of Appeals 20 May 2002.

*Frazier & Frazier, L.L.P., by Torin L. Fury, for plaintiff-
appellee.*

*Gray, Newell, Johnson & Blackmon, L.L.P., by Mark V.L. Gray,
for defendant-appellant.*

EAGLES, Chief Judge.

On 14 December 1997, Gregory Austin (Gregory) was driving a
1994 Mazda Protégé near the intersection of Randleman Road and
Interstate 85 in Greensboro, North Carolina. Gregory had obtained
possession of the car in return for $25.00 rock cocaine. Audrey Austin
(Audrey) was a passenger in the Mazda and was seated behind
Gregory. As Gregory drove, he "exchanged words with the driver of

another car" in the next lane. Gregory thought that one or more of the occupants of the other car had a gun. Acting on this belief, Gregory held his handgun out the driver's side window of the Mazda and fired once in the direction of the other car. As Gregory tried to fire a second time, his gun jammed. Gregory resolved the gun's jammed condition and then fired a second time. The second bullet ricocheted off the other car and then reentered the back portion of the Mazda Protégé killing Audrey. As a result of the shooting, Gregory pleaded guilty to second-degree murder.

Jackie McCollum Austin, Audrey's mother, filed a civil action against Gregory. Ms. Austin also brought an uninsured motorist claim against her insurer, Integon, for the wrongful death of her daughter.

Ms. Austin's policy states in relevant part:

We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of:

(1) Bodily injury sustained by an insured and caused by an accident . . . .

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

Integon (plaintiff) filed a declaratory judgment action on 2 March 2000 alleging that coverage was not available to Ms. Austin under her uninsured motorist policy because the damages sought by Ms. Austin did not arise out of the operation, maintenance, or use of an uninsured motor vehicle. Ms. Austin (defendant) answered on 18 April 2000. Plaintiff moved for summary judgment on 19 December 2000. On 29 January 2001, the Honorable A. Moses Massey granted plaintiff's motion for summary judgment. Defendant appeals.

When determining whether a movant is entitled to summary judgment, this Court applies a two-part analysis of whether: (1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and (2) the moving party is entitled to judgment as a matter of law. *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 665, 449 S.E.2d 240, 242 (1994). On appeal, this Court must view the record in the light most favorable to the non-movant and draw all reasonable inferences in the non-

movant's favor. *Aetna Cas. & Sur. Co. v. Welch*, 92 N.C. App. 211, 213, 373 S.E.2d 887, 888 (1988).

Here, defendant contends that a genuine issue of material fact exists relating to whether the discharge of Gregory's gun was accidental. Defendant argues that Gregory's operation of a vehicle during which his gun accidentally discharged created a causal connection between the use of the vehicle and the accidental gun discharge that in turn spawned a viable claim for uninsured motorist coverage. We disagree.

In *Scales v. State Farm Mut. Auto. Ins. Co.*, 119 N.C. App. 787, 460 S.E.2d 201 (1995), this Court considered whether an insured's general automobile liability policy issued by State Farm covered an intentional shooting from the insured vehicle. The *Scales* Court held:

> In order for an injury to be compensable, there must be a causal connection between the use of the vehicle and the injury. This connection is shown if the injury is the natural and reasonable consequence of the vehicle's use. However, an injury is not a "natural and reasonable consequence of the use" of the vehicle if the injury is the result of something "wholly disassociated from, independent of, and remote from" the vehicle's normal use. Clearly, an automobile chase with guns blazing is not a regular and normal use of a vehicle.
>
> An intentional shooting such as occurred in this case is not a compensable act arising out of the ownership, maintenance, or use of an insured vehicle.

*Id.* at 790, 460 S.E.2d at 203 (citations omitted). *See also Wall v. Nationwide Mut. Ins. Co.*, 62 N.C. App. 127, 302 S.E.2d 302, (1983) (person outside vehicle injured by intentional discharge of gun by person inside vehicle not covered by vehicle's insurer). *Cf. State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 350 S.E.2d 66 (1986) (holding that "[s]ince the transportation and unloading of firearms are ordinary and customary uses of a motor vehicle, and the injury-causing accident here resulted from the unloading of the transported rifle, such injuries were a natural and reasonable incident or consequence of the use of the motor vehicle").

Here, Gregory filed an affidavit wherein he stated that he "held the handgun out the window and it accidentally discharged after jamming" and that he "did not intend to harm the passenger, Audrey

Simone Austin." Even accepting as true Gregory's claim that the discharge of the gun was accidental, summary judgment is still proper. Intentionally pointing a gun out the window of a moving automobile towards the occupants of another moving automobile does not constitute normal or ordinary use of a motor vehicle. The fact that the gun may have accidentally discharged after it jammed while Gregory was attempting to fire it is irrelevant. Gregory's pointing of the gun violated N.C.G.S. § 14-34, which states: "If any person shall point any gun or pistol at any person, either in fun or otherwise, whether such gun or pistol be loaded or not loaded, he shall be guilty of a Class A1 misdemeanor."

In this instance, "the automobile was merely the situs of the assault." *See Nationwide Mut. Ins. Co. v. Webb*, 132 N.C. App. 524, 526, 512 S.E.2d 764, 765 (1999). The death of Audrey Austin "resulted from something wholly disassociated from, independent of, and remote from the [Mazda's] normal use." *Id.* at 526-27, 512 S.E.2d at 766 (citations omitted). Because Audrey Austin's death was the result of Gregory's intentional pointing of the gun out the window of the Mazda Protégé and the subsequent discharge of the gun, we hold that Audrey Austin's death was not the natural and reasonable consequence of the use of the Mazda Protégé but was the result of something " 'wholly disassociated from, independent of, and remote from' the vehicle's normal use." *Scales*, 119 N.C. App. at 790, 460 S.E.2d at 203 (citation omitted). Accordingly, we hold that defendant's uninsured motorist policy did not provide coverage for the wrongful death of defendant's daughter, Audrey Austin. The trial court's entry of summary judgment in favor of plaintiff is affirmed.

Affirmed.

Judges McGEE and TYSON concur.