MURPHY, Judge.
 

 *723
 
 Mark Burwell ("Defendant") appeals from his judgments for assault on a law enforcement officer inflicting serious bodily injury and attaining habitual felon status. On appeal, Defendant argues the following: (1) the trial court erred by denying his Motion to Dismiss because he only used the amount of force reasonably necessary to resist an unlawful arrest; (2) the trial court erred or plainly erred by denying his Motion to Suppress and admitting evidence obtained as a result of an unlawful arrest; (3) the trial court erred or plainly erred by failing to instruct the jury on the right to resist an unlawful arrest; and (4) the trial court erred or plainly erred by failing to instruct the jury on the right to defend oneself from excessive force by a law enforcement officer.
 

 After careful review, we conclude Defendant received a fair trial, free from error.
 

 *587
 

 Background
 

 At approximately 4 a.m. on 12 October 2014, Officer Sean Cook ("the Officer") arrived at Kay Drive in Smithfield, in reference to a 911 call reporting a suspicious person who refused to leave the apartment complex. Kay Drive and the apartments therein are subject to Section 8 housing. Section 8 of the United States Housing Act of 1937, as amended in 1974, established "Section 8," the federally subsidized housing assistance payments program.
 
 See
 
 42 U.S.C. § 1437f (2015). The Officer testified that Smithfield police officers have an agency agreement with Kay Drive, wherein they have the authority to remove trespassers from the property, as that section and the apartments therein are subject to Section 8 housing.
 

 *724
 
 The Officer was given information that the suspicious person was a male in his thirties wearing all black, and could be found near or around an older model, black truck. Upon his arrival, the Officer noticed Defendant, a male wearing all black clothing, standing in front of an older model, black truck. The Officer determined Defendant matched the description given to him by dispatch. He approached Defendant, and saw a beer can in Defendant's hand. The Officer asked Defendant to walk towards him, and Defendant complied. Seeing Defendant no longer held the beer can, the Officer told Defendant to retrieve the can and dispose of it. Defendant again complied. The Officer and Defendant spoke "at length[,]" and he could smell the strong odor of an alcoholic beverage emitting from Defendant. Upon request, Defendant provided the Officer with his identification.
 

 Investigating further, the Officer, accompanied by Defendant, went to the door of the individual who made the 911 call. The Officer spoke with the woman who answered the door, who he testified he believed to be the caller. The Officer explained, to her and to Defendant, that Defendant was trespassing on the property. Defendant "appeared to understand that he was going to be trespassing [sic] the property." "Based on the totality of the circumstances and his impairment" the Officer then asked Defendant how he was going to get home. Defendant had no clear answer, and "[h]is story constantly changed." The Officer decided to "detox"
 
 [1]
 
 Defendant. He informed Defendant that Defendant was being "trespassed[,]" and, although not under arrest, he was going to be taken for a detox.
 

 Preparing for transport, the Officer attempted to handcuff Defendant, in accordance with his department's policy to handcuff individuals transported by police vehicles. Due to Defendant's large frame, Defendant could not put his hands together behind his back. The Officer reached for his handcuff pouch, and when the "snap of the handcuff pouch happened," Defendant became aggressive, used "foul language[,]" tensed up, and tried to pull away from the Officer. The Officer testified that, in response, he tried to get control of Defendant. The Officer pushed Defendant into the side of his police vehicle. The Officer testified that once Defendant resisted, he was under arrest for "resist, delay and obstruct[,]" and he told Defendant he was under arrest.
 

 *725
 
 Defendant tried to turn around and "raised his fist as if to throw a punch[,]" causing the Officer to disengage and stand back. The Officer pointed his Taser at Defendant, giving commands and advising him he was under arrest. Defendant took flight, and the Officer gave chase, Taser in hand. Defendant fell to the ground, lying on his back. The Officer commanded Defendant to roll over and place his hands behind his back. Defendant refused to comply, and raised his feet and hands towards the Officer, "taking a combat stance." The Officer fired his Taser, incapacitating Defendant for five seconds. The Officer testified that the "whole time [he] had been on the radio advising [he] was in a chase" and Defendant had been Tased. When Defendant began removing the Taser's probes, the Officer attempted to tase him again, but it was ineffective, as Defendant had removed one of the leads.
 

 *588
 
 Defendant took flight a second time, and the Officer chased him. The Officer tackled Defendant. The Officer testified: "It's at this time that the fight was on." Defendant began striking the Officer, and the Officer responded, striking Defendant. The Officer testified that "the whole time [he was] giving verbal, clear commands, [and] also trying to talk on [his] radio."
 

 The Officer's radio was positioned on his shirt, at the center of his chest. At one point, Defendant grabbed the radio and "slung it off to the side" so that the Officer could no longer use it. The blows continued. Defendant reached down and grabbed the Officer's pistol. The two struggled, and the Officer eventually regained control of the pistol. The Officer struck Defendant's thigh with his Asp Baton, but then threw it away because it was ineffective to restrain Defendant.
 

 The Officer, still on top of Defendant, "took a rear mount" and placed his left forearm in front of Defendant's face to try to hold him down. Defendant continued to fight, and bit the Officer's left forearm, causing the Officer to reposition. Defendant bit him a second time, causing the Officer to release Defendant. Defendant tried to turn around, so the Officer again repositioned. Defendant bit him a third time, on the Officer's right bicep. Defendant was then able to get "a front mount" on top of the Officer. When the Officer's backup arrived, the Officer was lying on his back, attempting to defend himself. The Officer and Defendant continued to struggle as backup assisted in securing Defendant.
 

 The Officer's injuries included: sustained puncture wounds on his left forearm and right bicep, severe bruising and depressions, permanent scarring, and scabbing. The scarring includes a large circle on his right bicep, "just over a half an inch to an inch in a circle" with a "large
 
 *726
 
 depression[,]" and "a deep ridge" on his left arm. The Officer experienced loss of sleep and extreme stress. He also had to be tested multiple times for communicable diseases, which he described as "extremely nerve-racking[.]"
 

 Defendant was indicted for: (1) assault on a law enforcement officer inflicting serious bodily injury by "biting [the Officer]" and "hitting him about his face with closed fists[;]" (2) assault with a deadly weapon inflicting serious bodily injury, the deadly weapon being Defendant's teeth; and (3) attaining habitual felon status. Defendant filed a pretrial Motion to Suppress, arguing the arrest was unlawful, and, thus, any acts after the arrest should be suppressed as fruits of the poisonous tree. The trial court denied this motion. At the end of the State's evidence, Defendant again argued the arrest was unlawful, moving to dismiss the charges. His motion was denied. Defendant did not present any evidence, and renewed his Motion to Dismiss. The trial court again denied the motion.
 

 The jury returned verdicts of guilty for assault on an officer inflicting serious bodily injury, assault inflicting serious injury, and attaining habitual felon status. The trial court arrested judgment on the assault inflicting serious injury offense, and entered judgment on the offense of assault on a law enforcement officer inflicting serious bodily injury with the habitual felon enhancement. Defendant was sentenced to an active term of 146 to 188 months. Defendant gave oral notice of appeal.
 

 Analysis
 

 On appeal, Defendant presents four arguments: (1) the trial court erred by denying his Motion to Dismiss; (2) the trial court erred or plainly erred by denying his Motion to Suppress and admitting evidence obtained as a result of an unlawful arrest; (3) the trial court erred or plainly erred by failing to instruct the jury on the right to resist an unlawful arrest; and (4) the trial court erred or plainly erred by failing to instruct the jury on the right to defend oneself from excessive force by a law enforcement officer. We disagree and address the arguments in turn.
 

 I. Motion to Dismiss
 

 Defendant argues the trial court erred by denying his Motion to Dismiss because he only used the amount of force reasonably necessary to resist an unlawful arrest when he fought the Officer. We disagree.
 

 We review the denial of a motion to dismiss de novo.
 

 *589
 

 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007) (citation omitted). A trial court properly denies a motion to dismiss if "there is substantial
 
 *727
 
 evidence (1) of each essential element of the offense charged, and (2) that defendant is the perpetrator of the offense."
 

 Id.
 

 at 62
 
 ,
 
 650 S.E.2d at 33
 
 (citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 

 Id.
 

 at 62
 
 ,
 
 650 S.E.2d at 33
 
 (quotation omitted). In making this determination, the trial court considers the evidence in the light most favorable to the State.
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192-93,
 
 451 S.E.2d 211
 
 , 223 (1994) (citation omitted).
 

 To prove assault on a law enforcement officer inflicting serious bodily injury, the State must show: (1) the defendant assaulted the victim; (2) serious bodily injury occurred; (3) the victim was a law enforcement officer performing his official duties at the time of the assault; and (4) the defendant knew or had reasonable grounds to know that the alleged victim was a law enforcement officer. N.C.G.S. § 14-34.7(a) (2015) ;
 
 see also
 
 N.C.P.I.-Crim. 208.94 (2015).
 

 The State provided substantial evidence of each essential element of assault on a law enforcement inflicting serious bodily injury; therefore, it was proper for the trial court to deny Defendant's Motion to Dismiss. Element (1) requires the State provide substantial evidence of:
 

 an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.
 

 State v. Mitchell
 
 ,
 
 358 N.C. 63
 
 , 69-70,
 
 592 S.E.2d 543
 
 , 547 (2004) (quotation omitted). The State provided such relevant evidence when the Officer testified that Defendant hit and bit him multiple times, wounding him.
 

 Section 14-32.4(a) (2015) of the North Carolina General Statutes defines Element (2) as an injury "that creates a substantial risk of death, or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization."
 
 State v. Williams
 
 , --- N.C. App. ----, ----,
 
 804 S.E.2d 570
 
 , 577 (2017) (quoting N.C.G.S. § 14-34.7(a) );
 
 see also
 
 N.C.P.I.-Crim. 208.94. Here, the Officer testified that Defendant's bites caused extreme pain, skin removal, permanent scarring, and hospitalization. Photographs of the injuries were shown to the jury. Further, the trial court permitted the Officer to show his scarring to the jury, which included a depressed circle on his right bicep
 
 *728
 
 that is "just over half an inch to an inch in a circle" and scarring on his left arm that the Officer described as "a deep ridge[.]" A reasonable juror could find this evidence sufficient to conclude the Officer's injuries caused serious permanent disfigurement, or a permanent or protracted condition that caused extreme pain, or injury that resulted in prolonged hospitalization. Thus, viewing the evidence in the light most favorable to the State, there is substantial evidence that the Officer suffered a serious bodily injury.
 

 With regard to Element (3), the Officer was a law enforcement officer at the time of the incident. In the light most favorable to the State, the evidence shows that, when the assault occurred, the Officer was attempting to discharge his official duties as a routine patrol officer by responding to a report about a trespasser, conducting investigative work, and acting on the results of his investigation. Whether an officer is engaged in the performance of his official duties includes both the hot pursuit of a suspect, and also "such duties as investigative work ... and routine patrol by automobile."
 
 State v. Gaines
 
 ,
 
 332 N.C. 461
 
 , 471,
 
 421 S.E.2d 569
 
 , 574 (1992). Moreover, "criminal liability for the offense of assaulting an officer is not limited to situations where an officer is engaging in lawful conduct in the performance or attempted performance of his or her official duties."
 
 State v. Friend
 
 ,
 
 237 N.C. App. 490
 
 , 495,
 
 768 S.E.2d 146
 
 , 149 (2014). There is substantial evidence the Officer was a law enforcement officer performing his official duties at the time of the assault.
 

 *590
 
 Finally, the State put forth substantial evidence of Element (4). Defendant knew or had reasonable grounds to know the alleged victim was a law enforcement officer, as the Officer arrived in a marked patrol vehicle, was uniformed, and told Defendant he was a law enforcement officer. Thus, the State provided such relevant evidence as a reasonable mind might accept as adequate to support a conclusion as to each element of assault on a law enforcement officer inflicting serious bodily injury. The trial court did not err in denying Defendant's Motion to Dismiss.
 

 II. Motion to Suppress
 

 Defendant argues the trial court erred or plainly erred by denying his Motion to Suppress and admitting evidence obtained as a result of an unlawful arrest. We disagree. Even if a police officer's conduct violates a defendant's Fourth Amendment rights, evidence of an attack on an officer is not fruit of a poisonous tree subject to suppression.
 
 Friend
 
 ,
 
 237 N.C. App. at 495-96
 
 ,
 
 768 S.E.2d at 150
 
 (citation omitted).
 

 *729
 
 As a preliminary matter, Defendant did not adequately preserve appellate review of the denial of his Motion to Suppress because he failed to object to the evidence at the time it was offered at trial.
 
 See
 

 State v. Golphin,
 

 352 N.C. 364
 
 , 449,
 
 533 S.E.2d 168
 
 , 224 (2000) (explaining a pretrial motion to suppress is a type of motion
 
 in limine
 
 and that such a "motion ... is not sufficient to preserve for appeal the question of admissibility of evidence if the defendant does not object to that evidence at the time it is offered at trial") (citation omitted);
 
 see also
 

 State v. Waring,
 

 364 N.C. 443
 
 , 468,
 
 701 S.E.2d 615
 
 , 631-32 (2010). Thus, Defendant waived any objection to the denial of his Motion to Suppress.
 

 However, on appeal, Defendant specifically and distinctly requests we review the denial of the Motion to Suppress for plain error.
 

 In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.
 

 N.C.R. App. P. 10(a)(4) (2016). "[T]he plain error standard of review applies on appeal to unpreserved instructional or evidentiary error[,]"
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012), which includes the denial of a pre-trial motion to suppress when a defendant fails to object to the admission of evidence that was the subject of his pre-trial motion to suppress.
 
 State v. Williams
 
 , --- N.C. App. ----, ----,
 
 786 S.E.2d 419
 
 , 424-25 (2016). Plain error exists when "a fundamental error occurred at trial[,]" and, absent the error, it is probable the jury would have returned a different result.
 
 Lawrence,
 

 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 334
 
 .
 

 "The doctrine of the fruit of the poisonous tree is a specific application of the exclusionary rule[,]" providing for the suppression of "all evidence obtained as a result of illegal police conduct."
 
 Friend
 
 ,
 
 237 N.C. App. at 495
 
 ,
 
 768 S.E.2d at
 
 150 (citing
 
 State v. McKinney,
 

 361 N.C. 53
 
 , 58,
 
 637 S.E.2d 868
 
 , 872 (2006) ). However, this doctrine does not permit evidence of attacks on police officers to be excluded, even "where those attacks occur while the officers are engaging in conduct that violates a defendant's Fourth Amendment rights."
 
 Friend
 
 ,
 
 237 N.C. App. at 495-96
 
 ,
 
 768 S.E.2d at 150
 
 (citation omitted). Thus, where a defendant argues an initial stop or subsequent arrest violated "his Fourth Amendment rights, the evidence of his crimes against the officers would not be considered excludable 'fruits' pursuant to the doctrine."
 
 Id.
 
 at 496,
 
 768 S.E.2d at 150
 
 (citation omitted).
 

 *730
 
 Here, Defendant seeks the suppression of evidence of an attack on a police officer. Since evidence of an attack on a police officer cannot be suppressed as a fruit of the poisonous tree,
 
 id.
 
 at 495-96,
 
 768 S.E.2d at 150
 
 , the evidence Defendant sought to suppress cannot be suppressed as a matter of law. Thus, although the trial court denied the Motion to Suppress on other grounds,
 
 [2]
 
 Defendant cannot
 
 *591
 
 establish prejudicial error, much less plain error.
 

 III. Resisting an Unlawful Arrest Instruction
 

 Defendant argues the trial court erred or plainly erred by failing to instruct the jury on the right to resist an unlawful arrest. We disagree.
 

 At trial, Defendant neither requested, nor objected to the omission of, a jury instruction on the defense of the right to resist an unlawful arrest. Thus, we review for plain error.
 

 "When [a] defendant fail[s] to object to the instructions at trial but claims on appeal of improper jury instructions, the instructions are reviewed for plain error."
 
 State v. Garris
 
 ,
 
 191 N.C. App. 276
 
 , 287,
 
 663 S.E.2d 340
 
 , 349 (2008) (citation omitted).
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.
 

 Lawrence
 
 ,
 
 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 334
 
 (alteration in original) (citations, quotations, and internal quotation marks omitted). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result."
 

 *731
 

 State v. Jordan
 
 ,
 
 333 N.C. 431
 
 , 440,
 
 426 S.E.2d 692
 
 , 697 (1993) (citation omitted). "However, before engaging in plain error analysis it is necessary to determine whether the instruction complained of constitutes error."
 
 State v. Cummings
 
 ,
 
 361 N.C. 438
 
 , 470,
 
 648 S.E.2d 788
 
 , 807 (2007) (citation omitted).
 

 "A person ... has the right to resist an unlawful arrest by the use of force, as in self-defense, to the extent that it reasonably appears necessary to prevent
 
 unlawful
 
 restraint of his liberty ...."
 
 State v. Sanders
 
 ,
 
 303 N.C. 608
 
 , 622,
 
 281 S.E.2d 7
 
 , 15 (1981) (emphasis added and omitted) (quotation omitted). However, this "right is limited to the use of such force as reasonably appears to be necessary to prevent the unlawful restraint of his liberty."
 
 State v. Branch
 
 ,
 
 194 N.C. App. 173
 
 , 174,
 
 669 S.E.2d 18
 
 , 19 (2008) (internal quotation marks omitted). If the evidence tends to show an unlawful arrest occurred, it is error for the trial court to fail to instruct the jury on the right to resist an unlawful arrest.
 
 See
 

 State v. Sparrow
 
 ,
 
 276 N.C. 499
 
 , 513,
 
 173 S.E.2d 897
 
 , 906 (1970) (holding a trial court was in error when its instructions ignored whether the officers' actions were lawful when the evidence for the defendants tended to show the officers' actions were unlawful).
 

 For a warrantless arrest to be lawful, it "must be supported by probable cause."
 
 State v. Zuniga
 
 ,
 
 312 N.C. 251
 
 , 259,
 
 322 S.E.2d 140
 
 , 145 (1984) (citations omitted). Probable cause to arrest exists:
 

 when there is 'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.' (Citations omitted.) The existence of probable cause depends upon 'whether at that moment the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' (Citation omitted.)
 

 *592
 

 State v. Wrenn
 
 ,
 
 316 N.C. 141
 
 , 147,
 
 340 S.E.2d 443
 
 , 447 (1986) (alterations in original) (quotation omitted).
 

 Here, Defendant alleges the Officer's warrantless arrest was unsupported by probable cause, and, thus, was unlawful. Defendant presented no evidence at trial, and the State's evidence did not conflict with itself.
 

 The Officer maintains he had not arrested Defendant when he attempted to secure Defendant's hands in handcuffs. Instead, he claims he acted pursuant to the authority in N.C.G.S. § 122C-303 (2015), and
 
 *732
 
 only arrested Defendant once Defendant resisted the Officer's attempts to control Defendant's aggression. However, we are not bound by the Officer's articulation of when the arrest occurred.
 
 See
 

 Zuniga
 
 ,
 
 312 N.C. at 259
 
 ,
 
 322 S.E.2d at 145
 
 ("An officer's testimony that the defendant was or was not under arrest is not conclusive.") (citations omitted).
 

 When an "officer, by words or actions, indicates that an individual must remain in the officer's presence or come to the police station against his will, the person is for all practical purposes under arrest if there is a substantial imposition of the officer's will over the person's liberty."
 
 State v. Sanders
 
 ,
 
 295 N.C. 361
 
 , 376,
 
 245 S.E.2d 674
 
 , 684 (1978) (citation omitted). Section 15A-401(b)(1) (2015) of the North Carolina General Statutes permits an officer to "arrest without a warrant any person who the officer has probable cause to believe has committed a criminal offense ... in the officer's presence." Similarly, in
 
 Devenpeck v. Alford
 
 ,
 
 543 U.S. 146
 
 ,
 
 125 S.Ct. 588
 
 ,
 
 160 L.Ed.2d 537
 
 (2004), the Supreme Court of the United States held a warrantless arrest by an officer is reasonable under the Fourth Amendment if, given the objective facts available to the officer at the time of arrest, there is probable cause that a crime has been or is being committed.
 

 Id.
 

 at 152-53
 
 ,
 
 125 S.Ct. at 593-94
 
 ,
 
 160 L.Ed.2d at 544
 
 .
 

 A. N.C.G.S. § 122C-303
 

 The Officer testified that he acted pursuant to N.C.G.S. § 122C-303 when he attempted to detox Defendant, and that doing so did not constitute an arrest. We disagree. Although "[n]o person may be prosecuted solely for being intoxicated in a public place[,]" N.C.G.S. § 14-447(a) (2015), N.C.G.S. § 122C-303 permits an officer to take publicly intoxicated persons to jail, without arresting them, to assist such individuals.
 
 Davis v. Town of S. Pines
 
 ,
 
 116 N.C. App. 663
 
 , 671,
 
 449 S.E.2d 240
 
 , 245 (1994). An officer may only so assist if an "intoxicated individual is apparently in need of and apparently unable to provide for himself food, clothing, or shelter but is not apparently in need of immediate medical care and if no other facility is readily available to receive him." N.C.G.S. § 122C-303 ;
 
 see also
 

 Davis
 
 ,
 
 116 N.C. App. at 671
 
 ,
 
 449 S.E.2d at 245
 
 (applying N.C.G.S. § 122C-303 ). Taking an individual to jail under N.C.G.S. § 122C-303 against his will constitutes an arrest.
 
 Davis
 
 ,
 
 116 N.C. App. at 671
 
 ,
 
 449 S.E.2d at 245
 
 .
 

 Therefore, as it is apparent that Defendant did not consent to the Officer taking him to jail pursuant to N.C.G.S. § 122C-303, the Officer did not have the authority to take Defendant to jail under § 122C-303 without it constituting an arrest.
 
 See
 

 id.
 
 at 671,
 
 449 S.E.2d at 245
 
 . However, the Officer's failure to recognize this point of law does not make Defendant's
 
 *733
 
 arrest a
 
 per se
 
 violation of the Fourth Amendment because objective probable cause to arrest Defendant existed prior to the Officer imposing his will over Defendant's liberty.
 

 Indeed, the Officer himself testified: "I was just trying to simply do my job, trying to get this guy in detox. I decided not to charge him with anything
 
 even though I had several charges on him
 
 ." (Emphasis added).
 

 B. Objective Probable Cause to Arrest
 

 The Officer had objective probable cause to arrest Defendant. In
 
 Devenpeck
 
 , the Supreme Court of the United States held warrantless arrests are reasonable under the Fourth Amendment if there is objective probable cause to arrest for the violation of an offense.
 
 Devenpeck
 
 ,
 
 543 U.S. at 152-53
 
 ,
 
 125 S.Ct. at 593-94
 
 ,
 
 160 L.Ed.2d at 544
 
 . Thus, it is not necessary that Defendant was arrested for the commission of the offense for which probable cause exists, so long as the facts known to the Officer objectively provided probable cause to arrest him.
 
 See
 

 id="p593" href="#p593" data-label="593" data-citation-index="1" class="page-label">*593
 

 id.
 

 at 153
 
 ,
 
 125 S.Ct. at 594
 
 ,
 
 160 L.Ed.2d at
 
 544 ;
 
 see also
 

 Whren v. United States
 
 ,
 
 517 U.S. 806
 
 , 813,
 
 116 S.Ct. 1769
 
 , 1774,
 
 135 L.Ed.2d 89
 
 , 98 (1996) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.") (quotation omitted).
 

 Here, the objective facts known to the Officer provided him with sufficient probable cause to arrest Defendant for second-degree trespass.
 
 See
 
 N.C.G.S. § 14-159.13 (2015) ("second-degree trespass"). Under
 
 Devenpeck,
 
 it does not matter that the Officer did not arrest Defendant for second-degree trespass. The arrest was lawful because there was objective probable cause that Defendant committed second-degree trespass in his presence.
 
 See
 

 Devenpeck
 
 ,
 
 543 U.S. at 152-53
 
 ,
 
 125 S.Ct. at 593-94
 
 ,
 
 160 L.Ed.2d at 544
 
 .
 

 Second-degree trespass occurs when a person "enters or remains on premises of another" without authorization:
 

 (1) After he has been notified not to enter or remain there by the owner, by a person in charge of the premises, by a lawful occupant, or by another authorized person; or
 

 (2) That are posted, in a manner reasonably likely to come to the attention of intruders, with notice not to enter the premises.
 

 N.C.G.S. § 14-159.13. Second-degree trespass is a Class 3 misdemeanor.
 

 Id.
 

 *734
 
 Here, throughout the Officer's investigation, Defendant remained at the apartment complex without authorization, even after he had been notified not to enter or remain there by a person authorized to so notify him: the Officer. The trial court found the Officer had such authority, as the Smithfield police have authority to remove certain persons from Kay Drive. The Smithfield police officers have an agency agreement enforcing this authority.
 
 [3]
 

 The Officer testified Defendant understood that he was trespassing, and it was only after the Officer notified Defendant that he was trespassing that the Officer advised Defendant he was going to be transported for a detox. Thus, even though the Officer did not arrest Defendant with second-degree trespass, there was objective probable cause to do so at the time of Defendant's arrest.
 

 Defendant argues probable cause to arrest for second-degree trespass does not create objective probable cause to make Defendant's arrest lawful under
 
 Devenpeck
 
 because second-degree trespass is a misdemeanor, not a felony. However, neither N.C.G.S. § 15A-401(b) nor
 
 Devenpeck
 
 limit themselves in this way.
 
 [4]
 
 Since there was objective probable cause to arrest Defendant for second-degree trespass, the Officer lawfully arrested Defendant. Therefore, the trial court did not err when it did not include the right to resist an unlawful arrest in its jury instructions because the evidence demonstrated that an objectively lawful and constitutional arrest occurred. As there was no error, there was no plain error.
 
 See
 

 Cummings
 
 , 361 N.C. at 470,
 
 648 S.E.2d at 807
 
 .
 

 IV. Right to Defend Oneself From Excessive Use of Force by a Law Enforcement Officer Instruction
 

 Defendant argues the trial court erred or plainly erred by failing to instruct the jury on the right to defend oneself from excessive force by a law enforcement officer. Based on the evidence presented at trial, this argument lacks merit.
 

 At trial, Defendant neither requested, nor objected to the omission of, a jury instruction on the right to defend oneself from the excessive
 
 *735
 
 use of force by a law enforcement officer. Therefore, this issue is not properly preserved for our review on
 
 *594
 
 appeal. At Defendant's request, we review for plain error whether the trial court erred by not instructing the jury on the right to defend oneself from excessive use of force by a law enforcement officer.
 

 We review Defendant's appeal of improper jury instructions for plain error.
 
 See
 

 Garris
 
 ,
 
 191 N.C. App. at 287
 
 ,
 
 663 S.E.2d at 349
 
 (citation omitted);
 
 see also
 

 Lawrence
 
 ,
 
 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 334
 
 (citations omitted). However, we first determine "whether the instruction complained of constitutes error."
 
 Cummings
 
 , 361 N.C. at 470,
 
 648 S.E.2d at 807
 
 .
 

 "If attempting a lawful arrest, an officer has the right to use reasonable force to subdue the arrestee and the arrestee has no right to resist."
 
 State v. Burton
 
 ,
 
 108 N.C. App. 219
 
 , 226,
 
 423 S.E.2d 484
 
 , 488 (1992) (citation omitted). However, if "an officer uses excessive force to execute a lawful arrest, the arrestee may defend against the excessive force."
 
 Id.
 
 at 226,
 
 423 S.E.2d at
 
 488 ;
 
 see
 

 State v. Mensch
 
 ,
 
 34 N.C. App. 572
 
 , 575,
 
 239 S.E.2d 297
 
 , 299 (1977).
 

 [W]here there is evidence tending to show the use of such excessive force by the law officer, the trial court should instruct the jury that the assault by the defendant upon the law officer was justified or excused if the assault was limited to the use of reasonable force by the defendant in defending himself from that excessive force.
 

 Mensch
 
 ,
 
 34 N.C. App. at 575
 
 ,
 
 239 S.E.2d at 299
 
 .
 

 In the case before us, Defendant did not testify that his actions were an attempt to protect himself from excessive force, and the trial court did not instruct the jury about the right to defend oneself against the use of excessive force during an arrest. Only if the evidence tended to show that the use of force by the Officer was excessive did the trial court err by not instructing on this right.
 
 See
 

 Mensch
 
 ,
 
 34 N.C. App. at 575
 
 ,
 
 239 S.E.2d at 299
 
 .
 

 The evidence did not tend to show the use of force by the Officer was excessive. As discussed
 
 supra
 
 , the Officer lawfully arrested Defendant. Defendant provoked the Officer's use of force when he became aggressive as the Officer reached for his handcuff pouch. Defendant tensed, pulled away from the Officer, and tried to turn around. The Officer responded by pushing Defendant into the vehicle to prevent Defendant from escaping. Defendant then attempted to punch the Officer. The Officer stepped away, removed his Taser, pointed the Taser at Defendant,
 
 *736
 
 and told Defendant he was under arrest. Defendant fled, and then fell down. The Officer again pointed his Taser at Defendant, commanding Defendant to roll over and put his hands behind his back. Defendant did not comply; instead, he took "a combat stance[.]" Due to Defendant's noncompliance and aggressive stance, Defendant fired the Taser, momentarily incapacitating Defendant. Defendant then fled again. This time, the Officer gave chase, commanding Defendant to stop, and eventually tackling Defendant to the ground.
 

 Defendant proceeded to hit the Officer, remove the Officer's radio, and grab the Officer's pistol. The Officer tried to get control of Defendant by striking him with his baton and his hands, attempting to protect himself, to effectuate the arrest, and to prevent Defendant's escape. The Officer could not gain control; Defendant continued to hit him. Defendant then bit the Officer multiple times. All the Officer "could do was just hold" on until backup arrived. Before backup arrived, Defendant was able to sit on top of the Officer, straddling him, delivering blows to the Officer's face, body, and head. Backup officers arrived, securing Defendant. This incident lasted approximately two and a half minutes.
 

 This course of events, which Defendant did not present evidence to contradict, does not tend to show the Officer used excessive force. The Officer used the amount of force necessary to bring the situation under control. Therefore, since the trial court is only required to instruct the jury based on the evidence presented at trial,
 
 see
 

 State v. Anderson
 
 ,
 
 40 N.C. App. 318
 
 , 321,
 
 253 S.E.2d 48
 
 , 50 (1979), the trial court did not err when it did not instruct on the right to defend oneself against the use of excessive force during an arrest. There cannot be plain error,
 
 *595
 
 as there was no error.
 
 See
 

 Cummings
 
 , 361 N.C. at 470,
 
 648 S.E.2d at 807
 
 .
 

 Conclusion
 

 For the reasons stated above, the trial court did not err. The trial court properly denied Defendant's Motion to Dismiss and his Motion to Suppress. Furthermore, the trial court did not err when it did not
 
 sua sponte
 
 instruct the jury on the right to resist an unlawful arrest and the right to defend oneself against excessive force by a law enforcement officer. Defendant received a fair trial, free from error.
 

 NO ERROR.
 

 Judges HUNTER, JR. and DAVIS concur.
 

 [1]
 

 The Officer defined "detoxing" as taking an intoxicated person who has not committed a crime into custody to be held until he regains sobriety. The Officer testified that once an officer decides to detox someone, handcuffs are placed on the individual, in accordance with department policy, to further officer safety, and the individual is then transported to jail.
 

 [2]
 

 The order denying Defendant's Motion to Suppress determined that Defendant's Fourth Amendment rights were not violated, by concluding "the [O]fficer had reasonable suspicion to do an investigative detention based on the call from dispatch and all the observations that he had made at the scene and based on conversation with the lady that made the 911 call[;]" and "an arrest was not made until ... there was a breach of the peace, at which time [Defendant] was arrested for pulling away and being disruptive with the [O]fficer in his request for his instruction which gave rise to probable cause for the arrest of resisting and delaying by pulling away and refusing to be handcuffed."
 

 [3]
 

 The Officer testified the police have authority to remove persons from Kay Drive, as that section and the apartments therein are subject to Section 8 housing and there is an agency agreement giving the officers this authority.
 

 [4]
 

 Moreover, while not binding on our Court, we have previously applied
 
 Devenpeck
 
 in an unpublished case to a scenario where the objective probable cause to arrest a defendant was based on a misdemeanor crime.
 
 See
 

 State v. Stephens
 
 , No. COA05-1218,
 
 178 N.C. App. 393
 
 ,
 
 631 S.E.2d 235
 
 (N.C. Ct. App. July 5, 2006) (unpublished).