IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-914

Filed 5 December 2023

Johnston County, Nos. 18 CRS 1493, 54891–93

STATE OF NORTH CAROLINA

v.

JOHNNY LEE WILLIAMS, Defendant.

Appeal by Defendant from order entered 17 August 2022 by Judge Vince Rozier, Jr. in Johnston County Superior Court. Heard in the Court of Appeals 23 May 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Phillip T. Reynolds, for the State.*

*Dysart Willis, by Andrew Nelson, for Defendant-Appellant.*

CARPENTER, Judge.

Johnny Lee Williams ("Defendant") appeals from judgment entered after a jury found him guilty of one count of possessing methamphetamine, one count of possessing drug paraphernalia, one count of resisting a public officer, and one count of carrying a concealed weapon. On appeal, Defendant argues the trial court plainly erred in denying his motion to suppress because the suppression order contains erroneous findings of fact and conclusions of law. After careful review, we disagree with Defendant and find no plain error.

I.      **Factual & Procedural Background**

This case began with a traffic stop initiated by two Johnston County Sheriff's deputies on 3 August 2018 in a mobile-home park. On 4 September 2018, a Johnston County grand jury returned true bills of indictment against Defendant, charging him with one count each of the following: trafficking in methamphetamine by possession; trafficking in methamphetamine by transportation; possession of drug paraphernalia; possessing up to one-half ounce of marijuana; resisting a public officer; carrying a concealed weapon; and attaining the status of habitual felon. On 21 January 2020, a Johnston County grand jury returned a superseding true bill of indictment, indicting Defendant of one count of possession with intent to sell or deliver methamphetamine. On 22 March 2019, Defendant filed a pretrial motion to suppress the evidence collected by the deputies on 3 August 2018. On 17 February 2020, the Honorable Vince Rozier, Jr. conducted a pretrial hearing concerning Defendant's motion to suppress.

The evidence presented at the pretrial suppression hearing tended to show the following: On 3 August 2018, the Johnston County Sheriff's Department dispatched two deputies, Deputy Andrew McCoy and Deputy Jonathan Lee, in response to a service call concerning drug activity. Deputy McCoy testified that an anonymous caller stated "the meth man is on the way over [to the mobile-home park]," and that "a deal is about to happen." A follow-up call came in stating, "it's either lot 10 or 11 [of the mobile-home park] and should have a silver Saturn in the yard."

When Deputy McCoy arrived at the scene, he saw one silver car and one black car, both parked near a mobile home. Deputy McCoy parked behind the mobile home; he did not block either vehicle or use emergency signaling. There were four individuals in the silver car, and one individual in the black car. Deputy McCoy stood between the two vehicles and began speaking with the driver of the black car.

While Deputy McCoy was speaking with the driver of the black car, a passenger in the back seat of the silver car rolled down his window and spoke to Deputy McCoy. Deputy McCoy then "began to smell the odor of marijuana coming from the car." He also saw "marijuana crumbs," in plain view, on the rear passenger's lap and clothing. When questioned by Deputy McCoy as to how much marijuana he had in the car, the passenger responded, "none, I was just making a blunt." At that time, another back-seat passenger exited the silver vehicle and walked to the front of the vehicle.

Deputy Lee then arrived at the scene and parked directly behind Deputy McCoy. He "noticed the vehicle that had been described by the call notes" and walked up between the cars, where Deputy McCoy stood. Deputy McCoy approached the front passenger window of the silver car, where Defendant was seated. According to Deputy McCoy, Defendant's "hand was completely under his buttocks," and he "appeared to be stuffing something under his person and in his seat." After multiple requests, Defendant refused to show his hands or get out of the car. Deputy McCoy ultimately assisted Defendant out of the vehicle. Before Deputy McCoy could pat

down Defendant, another passenger started to run from the silver car, and Deputy McCoy chased him on foot.

Deputy Lee stayed with the vehicles and "tr[ied] to keep [the subjects, who had all exited from the vehicles,] centralized in one area" while also keeping an eye on Deputy McCoy's pursuit. Deputy Lee witnessed Defendant approach the driver's side of the black vehicle. Deputy Lee ordered Defendant to stay where he was.

Shortly thereafter, Deputy Lee observed Defendant "bend over in the front end of the vehicle in the grill area" and make "a swinging motion [with] his arm." Deputy Lee asked Defendant to stop moving. Defendant did not respond to Deputy Lee. Instead, Defendant moved to the opposite side of the vehicle and ran from the scene. Deputy Lee caught Defendant and patted him down, but Deputy Lee did not find any weapons or contraband on Defendant. After securing Defendant in a patrol car, the officers searched the area, including under and inside the vehicles. In the silver car, the officers found digital scales, a glass smoking pipe, a plastic bag containing what the officers believed was methamphetamine, a plastic bag containing what the officers believed was marijuana, and other drug paraphernalia.

On 17 February 2020, the trial court issued a written order denying Defendant's motion to suppress. On 8 March 2021, a jury trial began before the Honorable Thomas H. Locke, and the State introduced evidence collected from the scene without objection. The jury returned unanimous verdicts finding Defendant guilty of one count of possession of methamphetamine, one count of possession of drug

paraphernalia, one count of resisting a public officer, and one count of carrying a concealed weapon. Defendant admitted to attaining the status of habitual felon. The trial court sentenced Defendant to a minimum term of thirty-six months and a maximum term of fifty-six months in prison. Defendant filed deficient[1] written notice of appeal on 19 March 2021.

On 3 May 2022, after granting Defendant's first petition for writ of certiorari, this Court concluded the trial court's order denying Defendant's pretrial motion to suppress lacked sufficient conclusions of law. We remanded so the trial court could make the required conclusions. The trial court executed an amended order denying Defendant's motion to suppress on 17 August 2022. Defendant filed timely written notice of appeal on 25 August 2022.

## II.     Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2021).

## III.     Issue

The issue on appeal is whether the trial court plainly erred in denying Defendant's motion to suppress.

## IV.     Analysis

On appeal, Defendant argues that the trial court erred in denying his motion to suppress because the suppression order contains erroneous findings of fact and

---

[1] Defendant's notice of appeal inaccurately described the criminal counts included in the judgment issued by the trial court.

conclusions of law. Defendant argues Deputies McCoy and Lee violated his Fourth Amendment rights. After careful review, we disagree.

**A. Standard of Review**

Normally, "[t]he standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167–68, 712 S.E.2d 874, 878 (2011) (citing *State v. Brooks*, 337 N.C. 132, 140–41, 446 S.E.2d 579, 585 (1994)). And we review the trial court's conclusions of law de novo. *State v. Leach*, 166 N.C. App. 711, 715, 603 S.E.2d 831, 834 (2004).

But our standard of review changes when a motion-to-suppress issue is not preserved. *See State v. Burwell*, 256 N.C. App. 722, 729, 808 S.E.2d 583, 590 (2017). This is because we review certain unpreserved issues for plain error: "(1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). The second plain-error category "includes the denial of a pre-trial motion to suppress when a defendant fails to object to the admission of evidence that was the subject of his pre-trial motion to suppress." *Burwell*, 256 N.C. App. at 729, 808 S.E.2d at 590; *see also State v. Waring*,

364 N.C. 443, 468, 701 S.E.2d 615, 631–32 (2010) ("[T]o the extent defendant failed to preserve issues relating to the motion to suppress, we review for plain error.").[2]

"To preserve an issue for appeal, the defendant must make an objection at the point during the trial when the State attempts to introduce the evidence. A defendant cannot rely on his pretrial motion to suppress to preserve an issue for appeal. His objection must be renewed at trial." *State v. Golphin*, 352 N.C. 364, 463, 533 S.E.2d 168, 232 (2000) (citation omitted); *see State v. Oglesby,* 361 N.C. 550, 554, 648 S.E.2d 819, 821 (2007) (holding that "a trial court's evidentiary ruling on a pretrial motion is *not* sufficient to preserve the issue . . . for appeal unless a defendant renews the objection during trial").

Here, Defendant filed a motion to suppress the challenged evidence, but at trial, Defendant failed to object to the admission of the evidence. Thus, Defendant failed to preserve any issues concerning his motion to suppress. *See Golphin*, 352 N.C. at 463, 533 S.E.2d at 232. Defendant appealed, and in February 2022, we remanded the matter to allow the trial court to make adequate conclusions of law.

---

[2] In *Waring*, the Court declared the plain-error standard of review, yet it used the approach designated for preserved motion-to-suppress issues. *See Waring*, 364 N.C. at 468–74 701 S.E.2d at 631–35. This, however, was not a rejection of the plain-error standard; it was an application of the first plain-error step. The first step of the plain-error review is to determine if the trial court erred. *See State v. Lawrence*, 365 N.C. 512, 519, 723 S.E.2d 330, 335 (2012). In other words, if the trial court did not err, the trial court could not have *plainly* erred, so the analysis is complete. *See id.* at 519, 723 S.E.2d at 335. The *Waring* Court found no errors in the challenged motion to suppress, so there was no need to proceed to the second step of the plain-error review. *See Waring*, 364 N.C. at 468–74, 701 S.E.2d at 631–35; *Lawrence*, 365 N.C. at 519, 723 S.E.2d at 335 (stating that the second step of the plain-error review is to discern whether an error was "fundamental").

Our remand, however, did not negate the fact that Defendant failed to preserve the issues raised in his motion to suppress at trial. Thus, we review the trial court's denial of Defendant's motion to suppress for plain error. *See Burwell*, 256 N.C. App. at 729, 808 S.E.2d at 590; *Waring*, 364 N.C. at 468, 701 S.E.2d at 632.

To find plain error, this Court must first determine that an error occurred at trial. *See State v. Towe*, 366 N.C. 56, 62, 732 S.E.2d 564, 568 (2012). Second, the defendant must demonstrate the error was "fundamental," which means the error probably caused a guilty verdict and "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *State v. Grice*, 367 N.C. 753, 764, 767 S.E.2d 312, 320–21 (2015) (quoting *State v. Lawrence*, 365 N.C. 512, 519, 723 S.E.2d 330, 335 (2012)). Notably, the "plain error rule . . . is always to be applied cautiously and only in the exceptional case . . . ." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)).

## B. The Fourth Amendment and Applicable Rules

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Amendment protects citizens from unreasonable searches or seizures within their homes, *State v. Borders*, 236 N.C. App. 149, 163, 762 S.E.2d 490, 502 (2014), and within their vehicles, *State v. Mackey*, 209 N.C. App. 116, 124, 708 S.E.2d 719, 724 (2011).

Under the Fourth Amendment, "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497, 509 (1980). Freedom of movement is restrained by a show of authority "'if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *State v. Isenhour*, 194 N.C. App. 539, 543, 670 S.E.2d 264, 267 (2008) (quoting *Mendenhall,* 446 U.S. at 553, 100 S. Ct. at 1877, 64 L. Ed. 2d at 509). Whether a reasonable person would feel "free to leave" a police encounter is determined by analyzing the totality of circumstances. *Id.* at 543, 670 S.E.2d at 267–68; *State v. Icard*, 363 N.C. 303, 309, 677 S.E.2d 822, 827 (2009).

Circumstances that shape whether a reasonable person would feel free to leave a police encounter include, but are not limited to: (1) whether blue lights were illuminated; (2) whether police sirens were engaged; (3) whether weapons were displayed; (4) whether there was physical touching; (5) an officer's language and tone; and (6) the location of an officer's patrol car. *See Isenhour*, 194 N.C. App. at 543, 670 S.E.2d at 267–68; *Icard*, 363 N.C. at 309–10, 677 S.E.2d at 827–28. Notably, "[p]olice are free to approach and question individuals in public places when circumstances indicate that citizens may need help or mischief might be afoot." *Icard*, 363 N.C. at 311, 677 S.E.2d at 828.

Generally, seizures conducted without a warrant are "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and

well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576, 585 (1967) (footnote omitted). One such exception is when there is probable cause that an automobile contains contraband, such as a controlled substance. *State v. Degraphenreed*, 261 N.C. App. 235, 241, 820 S.E.2d 331, 336 (2018).

Probable cause is generally defined as "a reasonable ground" to suspect criminal activity. *State v. Yates*, 162 N.C. App. 118, 122, 589 S.E.2d 902, 904 (2004); *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795, 800, 157 L. Ed. 2d 769, 775 (2003) ("'[T]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt . . . .'") (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. Ed. 1879, 1890 (1949)). Under the North Carolina Controlled Substances Act, it is unlawful for anyone in North Carolina to possess a controlled substance, and marijuana is a controlled substance. *See* N.C. Gen. Stat. §§ 90-94(b)(1), -95(a)(3) (2021).

**C. The Suppression Order**

Here, Defendant was neither a resident nor had any possessory interest in the mobile home; thus, his reasonable expectation of privacy is limited to the vehicle in which he was a passenger. *See Borders,* 236 N.C. App. at 163, 762 S.E.2d at 502; *Mackey,* 209 N.C. App. at 124, 708 S.E.2d at 724.

**1. Challenged Finding of Fact**

First, Defendant challenges a portion of finding of fact 7, that "[a] black car was referenced in the anonymous call." The State concedes error, and we agree: The trial court's reference to an anonymous tip concerning a black car constitutes error, as the testimony only referenced a tip concerning a silver car.

But as we detail below, the trial court's error concerning finding of fact 7 was not plain error because admitting the challenged evidence did not violate Defendant's Fourth Amendment rights. In other words, the trial court's seventh finding of fact was not a plain error because it did not "seriously affect the fairness, integrity, or public reputation" of the trial, as the evidence found in the silver vehicle was appropriately admitted. *See Grice*, 367 N.C. at 764, 767 S.E.2d at 320–21.

## 2. Challenged Conclusions of Law

Next, Defendant challenges conclusions of law 10 and 11. Conclusion of law 10 states:

> As in *Florida v. Bostick*. . . , a seizure did not occur here simply because of the approach of law enforcement and the asking of a few questions. The individuals who were approached had the right . . . "to disregard the police and go about [their] business". . . . Their failure to do so and the voluntary statements made resulted in the encounter being consensual and no reasonable suspicion was required.

Conclusion of law 11 states: "The encounter with the Defendant did not trigger Fourth Amendment scrutiny." Defendant argues these conclusions are incorrect, and the deputies violated his Fourth Amendment rights. Although the suppression order

lacked clear constitutional analysis, we disagree with Defendant.

Here, when Deputy McCoy arrived at the scene, he saw one silver car and one black car, both parked near a mobile home. Prior to arrival, Deputy McCoy received an anonymous tip that an occupant of a silver car was about to engage in a drug deal. On arrival, Deputy McCoy parked behind the mobile home; he did not block the vehicles or use any emergency signaling. There were four individuals, including Defendant, in the silver car, and one individual in the black car. Deputy McCoy stood between the two vehicles and began speaking with the driver of the black car. While Deputy McCoy spoke with the driver of the black car, an occupant in the back seat of the silver car rolled down his window and spoke to Deputy McCoy.

At this point, the encounter between Deputy McCoy and the occupants of the vehicles, including Defendant, was consensual. *See Isenhour*, 194 N.C. App. at 543, 670 S.E.2d at 267–68; *Icard*, 363 N.C. at 309, 677 S.E.2d at 827. We analyze this encounter against the backdrop presumption that "[p]olice are free to approach and question individuals in public places when circumstances indicate that . . . mischief might be afoot." *See Icard*, 363 N.C. at 311, 677 S.E.2d at 828. Here, Deputy McCoy received a tip that the occupant of a silver car in the trailer park was about to engage in a drug deal, reasonably leading Deputy McCoy to believe that "mischief might be afoot." *See id.* at 311, 677 S.E.2d at 828.

Further, Deputy McCoy did not block the vehicles in; he did not engage his blue lights or sirens; he did not draw his weapon; and he did not touch any of the

occupants. Also, the conversations between Deputy McCoy and the vehicle occupants were not coerced; one of the occupants of the silver car rolled down his window to talk with Deputy McCoy—without Deputy McCoy asking the occupant to do so. Under the totality of circumstances, a reasonable person would have felt free to leave the encounter; thus, Defendant and the other vehicle occupants were not seized at this point. *See Isenhour*, 194 N.C. App. at 543, 670 S.E.2d at 267–68. Therefore, the trial court did not err in its tenth conclusion of law because the encounter was initially consensual. *See id.* at 543, 670 S.E.2d at 267–68.

After the back-seat occupant of the silver car rolled down his window to speak, Deputy McCoy "began to smell the odor of marijuana coming from the car." He also saw "marijuana crumbs," in plain view, on one occupant's lap and clothing. When questioned by Deputy McCoy as to how much marijuana he had in the car, the occupant responded, "none, I was just making a blunt."

As mentioned, marijuana is illegal in North Carolina. *See* N.C. Gen. Stat. §§ 90-94(b)(1), -95(a)(3). And the smell and sight of marijuana, coupled with an occupant's statement that he "was just making a blunt," are enough to establish "a reasonable ground" to suspect illegal drug possession. *See Yates*, 162 N.C. App. at 122, 589 S.E.2d at 904. Therefore, at this point in the interaction, the deputies had the requisite probable cause to seize the occupants of the vehicles, including Defendant. *See Degraphenreed*, 261 N.C. App. at 241, 820 S.E.2d at 336.

Further, and more specific to Defendant, Deputy McCoy then approached the front passenger window of the silver car, where Defendant was seated. Defendant's "hand was completely under his buttocks," and he "appeared to be stuffing something under his person and in his seat." After multiple requests, Defendant refused to show his hands or get out of the car. Deputy McCoy ultimately assisted Defendant out of the vehicle. These facts are specific to Defendant, and coupled with the facts above, are enough to establish "a reasonable ground" for suspicion of illegal drug possession. *See Yates*, 162 N.C. App. at 122, 589 S.E.2d at 904. Therefore, these facts bolstered the deputies' authority to seize Defendant. *See Degraphenreed*, 261 N.C. App. at 241, 820 S.E.2d at 336.

Nonetheless, the trial court's eleventh conclusion of law was erroneous: Contrary to the trial court's conclusion, "Fourth Amendment scrutiny" was "triggered" when Deputy McCoy assisted Defendant out of the vehicle because no reasonable person would have felt free to leave at that point. *See Isenhour*, 194 N.C. App. at 543, 670 S.E.2d at 267–68. But even so, the deputies had the requisite probable cause to seize Defendant, as a reasonable person would view Defendant's actions as "a reasonable ground" to suspect illegal drug possession. *See Yates*, 162 N.C. App. at 122, 589 S.E.2d at 904; *Degraphenreed*, 261 N.C. App. at 241, 820 S.E.2d at 336.

Although the trial court's eleventh conclusion of law was an error, it was not plain error because the deputies did not violate Defendant's Fourth Amendment

rights. *See Yates*, 162 N.C. App. at 122, 589 S.E.2d at 904. In other words, the trial court's eleventh conclusion of law was not a plain error because it did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings," as the evidence was appropriately admitted. *See Grice*, 367 N.C. at 764, 767 S.E.2d at 320–21. Accordingly, this is not "the exceptional case" that clears the plain-error threshold. *See Odom*, 307 N.C. at 660, 300 S.E.2d at 378.

## V.    Conclusion

We conclude that the trial court did not plainly err in denying Defendant's pretrial motion to suppress. Even though the suppression order contains an erroneous finding of fact and conclusion of law, the trial court appropriately denied Defendant's motion to suppress because the deputies did not violate Defendant's Fourth Amendment rights.

NO PREJUDICIAL ERROR.

Judge DILLON concurs.

Chief Judge STROUD concurs in result only.